Mary Elizabeth FAIMON, Appellant,

v.

WINONA STATE UNIVERSITY,
et al., Respondents.

No. C8–95–1210.

Court of Appeals of Minnesota.

Dec. 5, 1995.

Review Denied Feb. 9, 1996.

Morley Friedman, St. Paul, for appellant.

Hubert H. Humphrey, III, Attorney General, Steven B. Liss, Assistant Attorney General, St. Paul, for respondents.

Considered and decided by LANSING, P.J., and CRIPPEN and THOREEN*, JJ.

## OPINION

CRIPPEN, Judge.

Respondent Winona State University initially employed appellant Mary Faimon as a social work instructor for three consecutive one-year teaching terms. After first representing to appellant that the same position would be available for an additional year, respondent reclassified the position to a ten-

---

* Retired judge of the district court, serving as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

ure track professorship for which appellant was unqualified. Appellant, unable to secure employment for the following academic year, and claiming that her unemployment was caused by her reliance on respondent's promise, sued respondent under the promissory estoppel doctrine and for breach of contract and fraudulent misrepresentation. We affirm the trial court's summary judgment for the university.

## FACTS

Respondent hired appellant as a social work professor and field coordinator for the 1990–91 academic year. Appellant's position was a one-year, fixed-term position carrying no guarantee of rehire. The university commonly rehired holders of fixed-term positions for consecutive terms, and appellant was subsequently rehired to fill the position for the 1991–92 and 1992–93 academic years.

In February of 1993, respondent issued a notice of vacancy for the social work position for the 1993–94 academic year stating:

> This is a one-year, fixed-term position. If a tenure track position should be approved, it would not be before 1994–95 and for such a position, a Ph.D may be required.

Appellant made a timely application for the 1993–94 fixed-term position. Subsequently, appellant attended a professional conference but did not participate in the "job search" portion of the conference because she believed, after reading the February notice, that respondent would be offering another one-year social work position and that she would likely be selected again for the job.

In mid April, despite its statements in the February notice, respondent reclassified the social work position from fixed-term to tenure-track for the 1993–94 year. A union contract between the university and its employees, including appellant, permits the school to withdraw a notice of vacancy and terminate an employment search at any time. The contract is silent on the subject of reclassifying positions from fixed-term to tenure-track.

When informed of the reclassification, appellant applied for the tenure-track position, but was removed from consideration when respondent added to the position a doctoral degree requirement that appellant did not meet. Shortly thereafter, the university hired another applicant to fill the position. At that point, appellant began looking for other employment, but was unable to secure a teaching position for 1993–94.

In granting respondent a summary judgment, the trial court found that the university's statement that it would not reclassify the position before 1994–95 was not a promise, that appellant suffered no injustice from the decision to reclassify the position, and thus that the appellant's promissory estoppel claim failed as a matter of law. On other grounds, the trial court also dismissed appellant's breach of contract and misrepresentation claims.

## ISSUES

1. Did the trial court err by granting summary judgment for respondent on appellant's promissory estoppel claim?

2. Did the trial court err by dismissing appellant's breach of contract and misrepresentation claims?

## ANALYSIS

*Standard of review*

When reviewing a summary judgment, this court must determine whether any issues of material fact exist and whether the trial court erred in its application of the law. *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 112 (Minn.1992). We view the facts in the light most favorable to the non-prevailing party and resolve doubts regarding the existence of a material fact in that party's favor. *Id.* Furthermore, being the moving party, respondent bears the burden of showing that no genuine issues of material fact exist. *Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn. 1988).

### 1. Promissory Estoppel

Bearing in mind the standard of review on a trial court's award of summary judgment, the question before us is whether the court's determination that appellant failed as a matter of law to demonstrate the

elements of promissory estoppel was erroneous because (1) the trial court misapplied the promissory estoppel doctrine or (2) the trial court ignored issues of material fact raised by appellant.

The doctrine of promissory estoppel provides:

> [A] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise

Restatement (Second) of Contracts § 90(1) (1981); see also Cohen v. Cowles Media Co., 457 N.W.2d 199, 203–04 (Minn.1990) (citing Restatement) [hereinafter Cohen I]. The Minnesota Supreme Court has identified three prongs of the doctrine: promise, reliance and injustice. Cohen I, 457 N.W.2d at 203–04.

### a. Promise

■ Initially, application of the doctrine requires a "promise." Applying contract principles, the Minnesota Supreme Court has held that a promise must be "clear and definite" to trigger promissory estoppel analysis of its enforcement. Ruud v. Great Plains Supply, 526 N.W.2d 369, 372 (Minn.1995).

■ The trial court found appellant's promissory estoppel claims to be flawed, and its ultimate reasoning may have been no different from what is stated here. But we find no support for the trial court's holding that no promise was made. Respondent's statement, "If a tenure track position should be approved, it would not be before 1994–95," is a clear and definite commitment. The implications of this kind of promise are problematic, as discussed below, but this does not alter the fact that respondent's statement was unambiguous. Cf. Ruud, 526 N.W.2d at 371–72 (holding that the statement "good employees are taken care of" was too ambiguous to be a promise of permanent employment); Dumas v. Kessler & Maguire Funeral Home, 380 N.W.2d 544 (Minn.App.1986) (holding that employer's statement that he and employee would "retire together" did not establish a cause of action for promissory estoppel against employer.)

### b. Reliance

■ To recover on a promissory estoppel claim, appellant must also show that the promise is one that might reasonably induce the promisee's action or inaction. Restatement (Second) of Contracts § 90(1); see also Cohen I, 457 N.W.2d at 203–04 (citing Restatement).[1] Prior cases have not explicitly addressed whether this determination is one of fact or law. This court has stated that the reasonableness of a promisee's reliance on a promise is a determination of fact for the jury. Norwest Bank Minnesota, N.A. v. Midwestern Machinery Co., 481 N.W.2d 875, 880 (Minn.App.1992). Whether or not the factor is considered a fact question, we conclude that appellant has demonstrated this prong of the promissory estoppel doctrine for summary judgment purposes.

■ The record contains conflicting evidence of whether respondent should reasonably have expected appellant to rely on its promise to postpone reclassification of the social work position for one year. Appellant contends that the promise invited her to withhold applications for alternative employment and that respondent should reasonably have expected this reliance. Reliance and the likelihood of reliance are evident in the context of appellant's employment situation with respondent: (i) for each of three consec-

---

1. Courts have on occasion stated that the second element of promissory estoppel requires that the promisor "intend" for the promisee to rely on his or her promise. See, e.g., Ruud v. Great Plains Supply, 526 N.W.2d 369, 372 (Minn.1995); Cohen v. Cowles Media Co., 479 N.W.2d 387, 391 (Minn.1992) [hereinafter Cohen II]. We can find no case law suggesting the fruitfulness of searching for this "intent" on the promisor's part as opposed to exploring the promisor's reasonable expectations. Case law references to "intent" appear to be synonymous with the requirement in the Restatement and case law that the promise be one that the promisor "should reasonably have expected" to induce the promisee's reliance. See Cohen II, 479 N.W.2d at 391 (describing promissory estoppel's third element both as requiring "a promise which is expected to induce definite action by the promisee" and as requiring that the promisor "intended to induce reliance on the part of the promisee").

utive years, appellant had been hired for the nontenure-positions; (ii) until respondent reclassified the position, appellant was the recommended candidate for the position for a fourth year; and (iii) respondent's hiring committee almost always hires the recommended candidate for nontenure track positions.

Respondent points to the parties' stipulations that the notice statement about reclassification did not preclude respondent from either completely abolishing the social work position or hiring another candidate to fill the position. But if we view the conflicting evidence in the light most favorable to appellant, the record would permit a finding or a conclusion of law that respondent should reasonably have expected appellant's reliance on the promise not to reclassify the social work position before 1994–95.

c. Injustice

 Appellant's claim is defeated because she failed to demonstrate the third prong of promissory estoppel, injustice as a result of respondent's broken promise. The injustice factor is a question of law that the court must decide. *Cohen II*, 479 N.W.2d at 391; *Spanier v. TCF Bank Sav.*, 495 N.W.2d 18, 20 (Minn.App.1993). Numerous considerations enter into a judicial determination of injustice, including the reasonableness of a

promisee's reliance and a weighing of public policies in favor of both enforcing bargains and preventing unjust enrichment.[2]

The trial court concluded that justice did not require upholding an action on respondent's promise. Because respondent was never bound to renew appellant's contract, the court found that appellant's choice to neglect applying for other jobs was not reasonably induced by the promise respondent made. Likewise, we conclude that respondent's promise permitted appellant to predict good prospects for the renewal of her contract, but did not state an unconditional promise for such renewal. When respondent promised to delay creation of a tenure position both parties were fully aware of respondent's contract rights, even if it kept its promise, to hire someone other than appellant or to withdraw the notice and abolish the position altogether.

We note the evidence that at some point in the spring of 1993 appellant learned she was the favored candidate for the nontenure position. We do not doubt that this knowledge enhanced the reasonableness of appellant's continued reliance on respondent's promise, but we are not satisfied that the increased likelihood of her hiring diminished a mutual understanding that respondent had the right to hire someone else or no one at all.

---

2. More completely, the Restatement of Contracts refers to these considerations:

> Satisfaction of the [injustice] requirement may depend on the reasonableness of the promisee's reliance, on its definite and substantial character in relation to the remedy sought, on the formality with which the promise is made, on the extent to which the evidentiary, cautionary, deterrent and channeling functions of form are met by the commercial setting or otherwise; and on the extent to which such other policies as the enforcement of bargains and the prevention of unjust enrichment are relevant.

Restatement (Second) of Contracts § 90.1 cmt. b (1981).

We note a seeming contradiction between, on one hand, cases holding that the injustice prong of promissory estoppel is a question of law and, on the other hand, *Norwest Bank*, holding that the question of whether a promisee's reliance was reasonable—a factor the Restatement directs courts to consider in determining injustice—is a question of fact to be decided by the jury. *Nor-*

*west Bank*, 481 N.W.2d at 880. It is true that some considerations under the injustice issue, such as the reasonableness of a promisee's reliance, allude to the facts of the underlying claim, as illustrated by *Norwest Bank*. The ultimate decision on the issue, however, remains a question of law. *See Cohen II*, 479 N.W.2d at 391 (stating that the "third step in a promissory estoppel analysis: Must the promise be enforced to prevent an injustice? * * * is a legal question for the court, as it involves a policy decision"); *Spanier*, 495 N.W.2d at 20 ("Whether TCF Bank's promise of employment must be enforced for a long duration to prevent injustice, however, 'is a legal question for the court.'") (quoting *Cohen II*). We note that *Norwest Bank* was decided before *Spanier* and only six weeks after *Cohen*, so this Court may not have considered those cases in deciding *Norwest Bank*. In any event, *Norwest Bank* notwithstanding, we consider the reasonableness of appellant's reliance on respondent's promise as part of our legal determination of whether injustice resulted from respondent's breach of that promise, as provided in the Restatement.

In generic terms, the promise to appellant was one that a benefit would probably be given and that it would probably be given to appellant. We can find no precedent for application of the doctrine of promissory estoppel to enforce a promise with benefits as uncertain as these, and we conclude that this is not the kind of commitment calling for special judicial action in the name of avoiding injustice.

## 2. Other Issues

### a. Union Agreement Contract Claim

■ Appellant also claims that the university breached its union contract with her by failing to post a notice of vacancy for the reclassified tenure position. The parties stipulated that the contract requires respondent to post a notice of vacancy every time it fills a teaching position so that the faculty can review the opening, and that respondent failed to post such a notice for the tenure position. Appellant claims that a proper notice would have given her an earlier report about requirements for the tenured job and thus a meaningful opportunity to search for other employment.

The parties dispute whether appellant should be precluded from judicial relief on the notice clause because she did not use the mandatory arbitration procedure established in the union agreement. We need not reach this dispute; because we can only speculate as to any damages sustained by appellant as a result of respondent's failure to post a notice for the new position, a conclusion discussed below, appellant's substantive breach of contract claim is fundamentally flawed.

Appellant claims the union agreement required that respondent issue a notice of vacancy for the tenure position, informing appellant of the reclassification and advising her of the requirements for the new position. But the record reflects that appellant learned within one week about the reclassification and that she was told three days later that the new position might require a Ph.D.

Except for a general assertion that late winter is an important hiring period for professors, appellant offered no evidence that she was injured by being unaware of the reclassification and requirements of the new position for a short period. The specific job registry referenced in the record, which appellant elected to forgo, occurred before respondent reclassified the social work position so that any notice issued would have been posted after respondent's opportunity to participate in the registry had passed.

Appellant's union contract claim depends on speculative leaps: if respondent had issued a notice of vacancy for the reclassified position, appellant would have learned exactly how tenuous her job prospects were with respondent and she would have looked for another position earlier; if she had looked for another position earlier, she would have found one and she would not have suffered unemployment in 1993–94. Appellant cannot demonstrate to any degree of certainty that injury or damages resulted from respondent's failure to issue notices. *Jackson v. Reiling*, 311 Minn. 562, 249 N.W.2d 896, 897 (1977) (holding that if causation and damages are difficult to determine, injury is too speculative to support a claim).

Because appellant's damages theory is too speculative as a matter of law to sustain her union contract claim, the trial court properly awarded summary judgment in respondent's favor on that claim.

### b. Affirmative Action Guidelines Contract Claim

■ Appellant also argues that respondent breached a duty under its affirmative action hiring guidelines to follow the guidelines' search procedure in filling the reclassified social work position. Respondent's affirmative action guidelines outline an extensive search procedure for filling tenure positions and state that if time constraints preclude respondent from following the procedure for an upcoming year, respondent should temporarily offer the position as fixed-term while conducting an affirmative action search to fill the tenure position for the next year. Appellant asserts that as the recommended fixed-term candidate she stood to win the interim fixed-term position had respondent followed the guidelines.

This breach of contract claim fails because appellant has not shown the existence of a

pertinent contract. Appellant proposes that the affirmative action guidelines became a contract, pointing to *Pine River State Bank v. Mettille*, which holds that employee handbooks may become contracts between employers and employees. *Pine River*, 333 N.W.2d 622, 626 (Minn.1983). But in *Pine River* no formal written contract existed between the employees and the employer. *Id.* at 624. In this case, a written contract both existed and stated it was the only enforceable agreement between the parties.

Furthermore, in *Pine River* the handbook's purpose was to govern the relationship between employer and employee; in the instant case, by contrast, the affirmative action guidelines were designed to benefit prospective job applicants, not to govern respondent's relationship with existing employees.

*Pine River* does not apply to this case and appellant has offered no other theory that suggests why we should construe respondent's affirmative action guidelines as a contract. Moreover, even if the guidelines could be construed as a contract, appellant's claim fails on its merits. Appellant did not raise a jury question of damages because, again, she presented only speculative evidence that had respondent followed the guidelines it would have chosen her over some other candidate to fill the fixed-term position.

c. Misrepresentation Claims

 Finally, appellant asserts that respondent fraudulently or negligently misrepresented to her that she was being considered for a 1993–94 social work position when respondent either 1) knew that respondent was not being considered for a position or 2) knew that it had not yet been decided whether respondent would be considered for a position. Here also, appellant's claim fails because she did not present more than speculative evidence of damages.

 Both willful and negligent misrepresentation require a showing of injury resulting from the misrepresentation. *Hurley v. TCF Banking and Sav., F.A.*, 414 N.W.2d 584, 586 (Minn.App.1987); *Davis v. Re–Trac Mfg. Corp.*, 276 Minn. 116, 117, 149 N.W.2d 37, 38–9 (1967).

Appellant charges that respondent misrepresented appellant's status as a candidate for the social work position at different times during the hiring process that began when respondent issued a notice of vacancy for the fixed-term position in February 1993 and ended when respondent hired an applicant to fill the tenure position in June 1993. But the record reflects that appellant at most incorrectly apprehended her status for brief periods in April and May. If the representations were otherwise actionable, appellant produces no evidence that they had any material effect on her ability to secure employment in 1993–94. If they caused her to delay applying for other work, she failed to show lost opportunities that trace to the specific period of delay. Because we may do no more than speculate as to whether any delay caused appellant to be unemployed in 1993–94, appellant's misrepresentation claims do not raise jury questions of damages. *Jackson*, 249 N.W.2d at 897 ("Damages which are remote and speculative may not be recovered.") The trial court was correct to award summary judgment on appellant's claims to respondent.

**DECISION**

Affirming the trial court's decision that respondent is entitled to summary judgment on appellant's promissory estoppel claim, we hold that a promise that does not guarantee a benefit but merely creates the possibility that a benefit might exist and might be conferred on a promisee cannot sustain a promissory estoppel claim because, as a matter of law, no injustice results from the breach of such a promise. Further, we affirm the trial court's summary judgment on appellant's affirmative action guidelines contract claim, for lack of any evidence of a contract, and on appellant's union contract and misrepresentation claims, for lack of more than speculative evidence of injury.

**Affirmed.**