Allen JAVINSKY, P.E., Appellant,

v.

COMMISSIONER OF ADMINISTRA-
TION, Dana Badgerow, in an official
capacity as head of the Minnesota De-
partment of Administration, Respon-
dent.

No. A06–109.

Court of Appeals of Minnesota.

Jan. 2, 2007.

Gregory A. Abbott, Minneapolis, MN, for appellant.

Lori R. Swanson, Attorney General, Thomas C. Vasaly, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge; WORKE, Judge; and ROSS, Judge.

## OPINION

WORKE, Judge.

On appeal in this public-contract dispute, appellant Allen Javinsky argues that (1) the district court improperly denied appellant's request for mandamus and declaratory relief, and (2) summary judgment was improper on appellant's promissory-estoppel claim. Because appellant failed to timely appeal the district court's denial of his mandamus and declaratory relief claims and because he has not provided evidence of reasonable, detrimental reliance in his promissory-estoppel claim, we affirm.

## FACTS

In 1999, respondent Commissioner, Minnesota Department of Administration (DOA) began a multi-stage sewer-system replacement project at the Minnesota Correctional Facility–Faribault. At issue here is a contract for project 04–01 to reshape and grout the deep tunnel at the correctional facility. Generally, the DOA is responsible for administering construction projects under Minn. Stat §§ 16B.001–16B.282 (2004) and awards state contracts based on a selection process it coordinates. For certain projects, however, the selection of contractors is made by the State Design Selection Board (SDSB), an independent agency whose authority is defined by Minn.Stat. § 16B.33. Agencies must use the SDSB to select the primary designer on building construction or remodeling projects when estimated costs exceed a certain amount. The SDSB had previously selected the primary designer to perform the sewer-system-replacement project.

In 2003, the DOA decided to have the State Architect's Office (SAO) rather than the SDSB select an alternate project designer for the final phase of the project. The SAO requested proposals from four design engineers, including appellant, a subcontractor who had worked on the original project. In February 2004, after learning that he had not been chosen as the designer for the project, appellant objected to the selection process and contended that the SDSB, not the SAO, should have made the designer determination, as it had for earlier phases of the sewer-system-replacement project. The SAO reconsidered its decision and agreed, in a letter to the SDSB, that "the authority for selecting an alternative design firm remains with the [SDSB], not the [SAO]" and stated "[w]e reviewed the statute and agree that, technically, we did not have the authority to solicit proposals and make an alternate selection." The SDSB then requested proposals for the project and received submissions from appellant and a competitor. In April 2004, the SDSB notified appellant that he had been selected as the designer for the project. After the competitor challenged the SDSB's selection of appellant, respondent placed the contract process for the project on hold and requested information from the SDSB about its selection criteria and evaluation process.

In September 2004, respondent withdrew the responsibility for selecting a designer for the project from the SDSB because it had not provided the information respondent requested. Respondent ordered the SAO to issue a new request for proposals without further involvement from the SDSB. Respondent stated that "use of the [SDSB] is not statutorily mandated for infrastructure work (see definition of project in [Minn.Stat. § 16B.33, subd. 1(h)])." Appellant objected to respondent's decision to reject him as the designer for the project and to withdraw authority from the SDSB.

In October 2004, the SAO issued a request for proposals for the project. In November 2004, appellant sued respondent, seeking a writ of mandamus, declaratory judgment, promissory estoppel, and other relief. Following submissions of proposals in response to the SAO's request for proposals for the project, the competitor was selected as the designer. Appellant moved for injunctive relief, and the district court conducted a hearing on November 30, 2004.

Because legislative authority for the project was set to expire by December 31, 2004, if there was no contract, the parties agreed to treat the district court's decision on appellant's motion for injunctive relief as a summary judgment on his mandamus

and declaratory relief claims. On December 16, 2004, the district court denied appellant's motion for injunctive relief, refusing to issue a writ of mandamus or order a declaratory judgment. The district court found that respondent did not violate Minn.Stat. § 16B.33 by withdrawing the request for the SDSB to select a designer for the project and having the SAO make the selection instead. The district court directed entry of judgment with the determination that "there is no just reason for delay." Judgment was entered on December 27, 2004. After respondent moved for summary judgment on appellant's remaining promissory estoppel claim, the district court granted respondent's motion and entered judgment in favor of respondent, finding that appellant had failed to provide evidence supporting the injustice element of promissory estoppel. This appeal follows.

## ISSUES

I. Is appellant's appeal of the December 2004 judgment timely?

II. Did the district court err in granting summary judgment in favor of respondent on the promissory-estoppel claim?

## ANALYSIS

### I.

Appellant argues that he was not required to appeal the December 2004 judgment because it was an interlocutory judgment that did not resolve all of his claims. His notice of appeal only refers to the district court's judgment entered in November 2005. The district court "may direct the entry of a final judgment as to one or more but fewer than all of the claims of parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Minn. R. Civ. P. 54.02. It can be inferred from Minn. R. Civ.App. P. 104.01, subd. 1, that timely appeal of a judgment containing rule 54.02 certification is mandatory because rule 104.01 states "the time to appeal from any other judgment entered pursuant to [r]ule 54.02 shall not begin to run until the entry of a judgment which adjudicates all the claims and rights and liabilities of the remaining parties."

Minn. R. Civ. P. 54.02 is substantively identical to Fed.R.Civ.P. 54(b). The United States Supreme Court explained that federal rule 54(b) was promulgated to provide clarity to the parties when some but not all of the claims at issue have been decided, stating that "[a] party adversely affected by a final decision thus knows that his time for appeal will not run against him until this certification has been made," i.e., until the district court makes an express determination that there is no just reason for delay and expressly directs entry of judgment. *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435–36, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956). Similarly, the Minnesota Supreme Court reasoned that a party affected by an order with an express rule 54.02 certification has a right to expect that the expiration of the time for appeal would fully define the parameters of the litigation, promote principles of judicial economy, and afford the affected parties review prior to participating in any further proceedings necessitated by the district court's order. *In re State & Regents Bldg. Asbestos Cases*, 435 N.W.2d 521, 522 (Minn.1989).

In *Semiconductor Automation, Inc. v. Lloyds of London*, this court dismissed an appeal taken from a final judgment, holding that (1) an interlocutory order and judgment dismissing one defendant for lack of jurisdiction was immediately appealable, (2) "the inclusion of rule 54.02

language is not a prerequisite to appellate review," and (3) the plaintiff's failure to take an interlocutory appeal precluded the plaintiff's challenge to that ruling on appeal from the final judgment resolving the remaining claims. *Semiconductor Automation, Inc. v. Lloyds of London,* 543 N.W.2d 123, 124–25 (Minn.App.1996), *review denied* (Minn. Mar. 19, 1996). Three years later, this court dismissed a similar appeal from a final judgment, holding that failure to take an interlocutory appeal from an order and judgment dismissing one party for lack of subject matter jurisdiction precluded a later challenge to that dismissal. *Engvall v. Soo Line R.R.,* No. C6–99–64 (Minn.App. Mar. 16, 1999) (order). The supreme court reversed the dismissal order in *Engvall* and overruled this court's decision in *Semiconductor Automation,* rejecting the rule established by this court, which it described as characterizing an appeal from "an immediately appealable interlocutory order or judgment that does *not* contain an express Rule 54.02 determination" as "mandatory rather than permissive." *Engvall v. Soo Line R.R.,* 605 N.W.2d 738, 745 (Minn.2000) (emphasis added). The supreme court's characterization of the holding being reversed created an inference that inclusion of an express rule 54.02 determination *would* make an interlocutory appeal mandatory.

■ This view is consistent with an earlier decision of the Minnesota Supreme Court in which it considered whether a judgment, certified under rule 54.02, determining liability but not damages, "is a final judgment from which an appeal must be taken[.]" *See In re Commodore Hotel Fire & Explosion Case,* 318 N.W.2d 244, 246 (Minn.1982) (stating that rule 54.02 certification was inapplicable because "adjudication of liability, without determination of damages, is not an adjudication of

even one entire claim"). It is logical to conclude that the time to appeal a judgment entered with a proper rule 54.02 certification begins to run once the judgment is entered.

■ Here, the district court, in accordance with rule 54.02, expressly determined that "there is no just reason for delay," and directed entry of judgment. The district court apparently made the rule 54.02 certification without being requested to do so by either party. The district court was operating under the parties' agreement to expedite the proceeding by treating it as one for summary judgment on appellant's mandamus and declaratory relief claims because legislative funding for the project would expire on December 31, 2004, if a contract had not yet been finalized.

Appellant argues that because the district court's language made no reference to rule 54.02 he had no notice that this was a rule 54.02 order, and he would have no reason to believe that the 60–day appeal period had commenced. Appellant does not dispute that the district court entered judgment on part of his claims pursuant to rule 54.02 when it stated "There is no just reason for delay" and "Let judgment be entered accordingly." Appellant cites no authority for his proposition that the district court's order must explicitly state that it is being issued pursuant to rule 54.02.

Because the time to appeal from the district court's judgment expired on February 27, 2005, we may not consider appellant's appeal of the district court's decision or its inherent issues. Minn. R. Civ.App. P 104.01, subd. 1. Therefore, we must accept the district court's decision that respondent acted reasonably and within his authority to withdraw authority from the SDSB to select the designer for the pro-

ject and to rescind the SDSB's selection of appellant.

## II.

Appellant argues that the district court erred in granting summary judgment in favor of respondent on the promissory-estoppel claim. On appeal from summary judgment, we examine the record in the light most favorable to the party against whom summary judgment was granted to determine whether there are any genuine issues of material fact and whether the district court erred in applying the law. *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn.1995). Courts must draw all factual inferences in favor of the nonmoving party. *Meintsma v. Loram Maint. of Way, Inc.,* 684 N.W.2d 434, 438 (Minn.2004). Promissory estoppel is an equitable doctrine that implies a contract in law where none exists in fact. *Martens v. Minn. Min. & Mfg. Co.,* 616 N.W.2d 732, 746 (Minn.2000). Application of promissory estoppel requires a showing that (1) there was a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent injustice. *Olson v. Synergistic Techs. Bus. Sys., Inc.,* 628 N.W.2d 142, 152 (Minn.2001).

The record does not contain evidence of a clear and definite promise. In April 2004, the SDSB sent a letter to appellant confirming his selection as the primary designer for the project. But selection by the SDSB does not constitute a "clear and definite" promise that appellant will be given a contract nor does it automatically lead to the development of a contract. If a contractor's selection led to a clear and definite contract formation, then there would be no opportunity for a disappointed bidder to initiate a successful objection, as appellant had done after the first request for proposals, and as appellant's competitor did after the SDSB selected appellant. Therefore, the first element of promissory estoppel—a clear and definite promise—fails as a matter of law.

The second element of a promissory-estoppel claim is reliance. There is some evidence that the DOA intended for appellant to rely on being awarded the contract for the project. The request for proposals that appellant responded to required a statement from him of his commitment to be available to do the work promptly if he were selected. A DOA official also testified that a selected designer would be expected to be available to do the work. After his selection by the SDSB, appellant and the DOA entered into and completed contract negotiations in May 2004. Appellant also testified that while he did not turn down business, he did not pursue other opportunities because he was expected to be available to do the work for the project. If appellant had been made a clear-and-definite promise, the evidence would be sufficient to establish appellant's reliance for the purpose of defeating summary judgment on the reliance element. However, because we have concluded that a clear and definite promise did not exist, appellant's reliance was unreasonable.

The third element of promissory estoppel, that the promise must be enforced to prevent injustice, is a question of law. *Faimon v. Winona State Univ.,* 540 N.W.2d 879, 883 (Minn.App.1995), *review denied* (Minn. Feb. 9, 1996). Considerations include reasonableness of the promisee's reliance and weighing of public policies in favor of both enforcing bargains and preventing unjust enrichment. *Id.* The promisee must show that he relied on the promise to his detriment. *Martens,* 616 N.W.2d at 746.

There is no evidence that it was reasonable for appellant to rely on being offered a contract. Despite the statement from the SDSB that appellant had been selected, the SDSB's request for proposals stated that the request for proposals did not obligate the state to award a contract or complete the project. *See* Minn.Stat. § 16C.05, subd. 2(a) (2004) (stating that without the prior written approval of the commissioner a contract is not valid and binding on the state and work may not begin). The SDSB does not have the authority to negotiate or finalize a contract. *See Nicollet Restoration, Inc. v. City of St. Paul*, 533 N.W.2d 845, 846 (Minn.1995) (holding that land developer's reliance on representations made by city officials regarding possibility of city financing was not reasonable because there was no guarantee of the city council's approval). The state never entered into a contract with appellant for the project and there is no evidence that respondent ever approved the completion of a contract with appellant. On the contrary, respondent placed appellant's contract on hold in May 2004, and rescinded the SDSB's selection of appellant in September 2004. Respondent then asked the SAO to issue a new request for proposals for the project. Respondent executed a contract for the project with a designer other than appellant in December 2004. Appellant was aware that a competitor had objected to the SDSB's selection of appellant and appellant testified that "until I have a contract in my hand that is executed I don't have 100–percent confidence that that contract is complete." Appellant himself had successfully objected to a competitor's selection after the first request for proposals, so he fully understood that an initial selection is no guarantee that a contract will result. Appellant was also a subcontractor on an earlier phase of the sewer-replacement project and an experienced participant in the state's contracting process. *See Brown v. Minn. Dept. of Pub. Welfare*, 368 N.W.2d 906, 912 (Minn.1985) (stating that "those who deal with the [g]overnment are expected to know the law and may not rely on conduct by government agents that is contrary to law").

The situation in this case is similar to one that this court faced in *Faimon*, where this court addressed the reasonableness of an instructor's reliance on the university's promise that her job would be available to her for an additional year. *Faimon*, 540 N.W.2d at 883. Although her employer had made statements reassuring Faimon about the continuing nature of her job, Faimon had not been unconditionally rehired or promised a new contract. *Id.* However, Faimon had also not been discouraged from looking for other jobs. *Id.* We stated that Faimon's reliance was not reasonable despite the increased likelihood of her hiring because she understood that the university still had the right to hire someone else. *Id.* Likewise here, despite any assurances that appellant may have received, he understood that the contract might be awarded to someone else. Therefore, the record does not provide support for appellant's contention that it was reasonable for him to rely on getting the contract for the project.

We conclude that appellant's promissory-estoppel claim fails not only for lack of a clear and definite promise upon which appellant could have reasonably relied, but also because there is no evidence that appellant relied on such a promise to his detriment. There is no evidence that appellant had turned down other jobs or that appellant had other jobs available to him while he remained available to perform the project. Appellant's lost-profits estimate is based solely on his assertion that he did not pursue other jobs while he waited for the project contract to materialize. *See*

*Nicollet Restoration,* 533 N.W.2d at 848 (stating that speculation is not sufficient to create a genuine issue of material fact). After considering that the record contains no evidence that appellant was damaged by not getting the contract for the project, and that respondent acted within his authority to rescind appellant's selection by the SDSB, we conclude that justice does not require enforcement of a promise.

## DECISION

Because the time to appeal the district court's December 27, 2004 judgment expired, we may not consider appellant's appeal of the district court's decision or its inherent issues. Further, because there are no material facts to support appellant's claim that a clear and definite promise to enter a contract for the project, or that he reasonably relied to his detriment on such a promise, the district court did not err by granting summary judgment to respondent on appellant's promissory-estoppel claim.

**Affirmed.**