*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-1068**

Han Zhong,
Appellant,

vs.

Nicholas Dudero, et al.,
Defendants,

Stieg Strand, et al.,
Respondents.

**Filed March 23, 2026
Affirmed in part, reversed in part and remanded
Connolly, Judge**

Dakota County District Court
File No. 19HA-CV-22-1394

Ross M. Hussey, Steven Moore, David A. Brandis, Smith Jaden Johnson, PLLC, Bloomington, Minnesota (for appellant)

Steven J. Lodge, Steven J. Lodge, PLLC, Fridley, Minnesota (for respondents)

Considered and decided by Connolly, Presiding Judge; Smith, Tracy M., Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

In this appeal arising from a dispute over a real estate sale, appellant homeowner challenges the district court's order granting summary judgment in favor of respondents, seller's real estate agent and the real estate brokerage firm. Because no genuine issues of

material fact preclude summary judgment as to certain negligent misrepresentation and fraud claims, we affirm those portions of the district court's order. Because genuine issues of material fact preclude summary judgment on other negligent misrepresentation, fraud, breach of contract, and promissory estoppel claims, we reverse those portions of the district court's order. We therefore affirm in part, reverse in part, and remand for further proceedings.

## FACTS

This case arises from a real estate sale involving a residential property located in Eagan. At the time of this dispute, respondent Steig Strand (Strand) worked as a real estate agent under the brokerage of respondent Collopy Real Estate, Inc. (Collopy). In January 2021, Strand, in his capacity as a real estate agent for the Duderos (sellers), listed the property for sale on NorthstarMLS (MLS).[1] The MLS listing stated the following: "Step inside and see many improvements that the owners have done. Fresh paint, new floors, new appliances and lower level shower unit being replaced, custom+ New driveway, new deck, lots of fresh paint."

Initially, appellant Han Zhong (Zhong) acted as a buyer's real estate agent for Yan Pang (Pang), who submitted a purchase offer for the subject property, which the Duderos accepted. The Duderos then entered into a purchase agreement with Pang. The agreement was contingent on a professional inspection of the property. After the professional inspection was completed, Pang and the Duderos agreed to an amendment to the purchase

_____

[1] NorthstarMLS is a real estate listing service.

2

agreement in which the Duderos agreed to make certain repairs to the property before closing. After additional showings of the property, Pang became dissatisfied with the condition of the property and the quality of the improvements. Pang then indicated her intention to no longer purchase the property, which Zhong then communicated to Strand.

After learning of Pang's intent to no longer purchase the property, Strand allegedly "threatened to sue Ms. Zhong and to also lodge complaints against Ms. Zhong to the Minnesota Department of Commerce and the Minnesota Association of REALTORS." Strand then allegedly offered to forgo any lawsuit or complaint if Zhong found a way to complete the sale of the property. In response, Zhong agreed to become a co-buyer of the property, and would then buy out Pang's interest in the property after closing. As stated by Zhong, this "solution" resulted in "no change for seller" as Zhong's name was only being added as an additional buyer of the property.

An amendment to the purchase agreement was executed by Zhong, Pang, and the Duderos, which made Zhong a buyer in the transaction. At the final walkthrough of the property, Zhong noticed a black discoloration on the drywall in the garage and asked Strand if it was mold, to which Strand replied that it was just a water stain. Zhong, Pang, and the Duderos then closed on the sale of the property. After the closing, Zhong completed the buyout of Pang's ownership interest in the property. The Duderos then filed an ethics complaint against Zhong with the Minnesota Association of Realtors, which Strand joined. Following a hearing, the hearing panel found that Zhong had not committed any ethical violations.

Zhong initiated suit against Strand and Collopy.[2] Zhong alleged claims of negligent misrepresentation and common-law fraud regarding numerous defects in the subject property, and breach of contract and promissory estoppel regarding conversations with Strand.[3] Strand and Collopy moved for summary judgment. The district court granted summary judgment in favor of Strand and Collopy.

Zhong appeals.

## DECISION

Zhong challenges the district court's grant of summary judgment in favor of Strand and Collopy, contending there are genuine issues of material fact as to each of Zhong's claims. Strand and Collopy counter that the district court did not err in granting summary judgment in their favor because Zhong failed to produce evidence of material facts in dispute, and because no rational trier of fact could find for Zhong.

"On appeal from summary judgment, we review whether there are any genuine issues of material fact and whether the district court erred in its application of the law. We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002) (citations omitted). "We review de novo whether a genuine issue of material fact exists. We also review de novo whether the district court erred in its application of the law." *Id.* at 77.

---

[2] Zhong also brought suit against the Duderos. The Duderos are not involved in this appeal.
[3] Zhong also alleged claims of negligence and negligence per se, but the dismissal of these claims was not raised in this appeal.

"A genuine issue of material fact exists when there is sufficient evidence regarding an essential element to permit reasonable persons to draw different conclusions." *St. Paul Park Refin. Co. v. Domeier*, 950 N.W.2d 547, 549 (Minn. 2020) (quotation and ellipsis omitted). No genuine issue of material fact exists "when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 70 (Minn. 1997).

## I.  The district court erred in part by granting summary judgment to respondents on certain claims of negligent misrepresentation and fraud.

Zhong alleges claims of fraud and negligent misrepresentation due to Strand's alleged "false and misleading statements to [her] during the sales process in an effort to fraudulently complete the sale of the property." The alleged false statements by Strand include: (1) that the property had new floors and new appliances; (2) that the back deck on the property was new; (3) that a discoloration on the wall of the garage was not mold; and (4) that the Duderos had received eighteen offers on the property when the true number was sixteen. Each of these statements will be analyzed in turn.

To establish a negligent misrepresentation claim, the plaintiff must show: (1) a duty of care owed by the defendant to the plaintiff;[4] (2) the defendant supplied false information

---

[4] The district court concluded that Minn. Stat. § 82.68, subd. 3(a) (2024) provided the standard of care, and the parties do not challenge that conclusion on appeal. The statute requires an agent to disclose to a prospective purchaser all material facts of which the agent is aware that could adversely and significantly affect an ordinary purchaser's use or enjoyment of the property. Minn. Stat. § 82.68, subd. 3(a).

to the plaintiff; (3) justifiable reliance upon the information by the plaintiff; and (4) failure by the defendant to exercise reasonable care in communicating the information. *See Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 369 (Minn. 2009); *Florenzano v. Olson*, 387 N.W.2d 168, 174 (Minn. 1986); *Bonhiver v. Graff*, 248 N.W.2d 291, 298-99 (Minn. 1976). In addition to these elements, the plaintiff must suffer damages caused by "justifiable reliance on [the] statement" that was communicated to them. *Tschimperle v. Aetna Cas. & Sur. Co.*, 529 N.W.2d 421, 424 (Minn. App. 1995) (citing *Florenzano*, 387 N.W.2d at 174 n.3), *rev. denied* (Minn. May 31, 1995).

To establish a fraudulent misrepresentation claim, the plaintiff must show:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance.

*Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986).

### A. New flooring and appliances

Zhong contends that Strand's statements in the MLS listing—that the property had "new floors" and "new appliances"—were false and misleading because the floors and appliances were not all new. The district court concluded that Zhong's claims failed as a matter of law because there was "deposition testimony from Zhong indicating that she knew and recognized the existence of wear and tear for some floors and appliances at the property." The district court held that Zhong could not have "reasonably relied on Strand's

6

representations when she had actual knowledge of the defects and proceeded to closing, nonetheless." On appeal, Zhong contends that whether there was justifiable reliance is a question for the jury and not the court.

### 1. Negligent misrepresentation

For a negligent misrepresentation claim, justifiable reliance is typically a fact question for a jury, and only "becomes a question of law if there is no evidence supporting a contrary conclusion." *Greuling v. Wells Fargo Home Mortg., Inc.*, 690 N.W.2d 757, 760 (Minn. App. 2005).

### a. New flooring

As to the flooring, Zhong's interrogatory answer states that "the extent of the wear to the floors and stairs was discovered after Ms. Zhong took possession of the property." However, Zhong had visited the property on five occasions prior to closing, and she walked through the interior of the house on each of these occasions. Zhong's deposition testimony revealed the following:

> Q: . . . Do you know whether any of the flooring in the house
> was new at the time that you bought it?
> Zhong: I remember there is no new flooring.
> Q: Okay. So as far as you know, all of the flooring in the house
> at the time that you bought it was not new; is that fair?
> Zhong: Yeah.
> Q: Okay. And you saw that flooring before you went to the
> closing, correct?
> Zhong: Yes.

Zhong's deposition testimony reflects that, when visiting the property prior to closing, she became aware that the flooring in the house was not new, but that she still proceeded with the closing. Based on these facts, Zhong has failed to raise a genuine issue

7

of material fact regarding whether she justifiably relied on the MLS listing stating there were new floors. *See Greuling*, 690 N.W.2d at 760.

Accordingly, we affirm the district court's grant of summary judgment on the negligent misrepresentation claim as it relates to the flooring.

### b. New appliances

As to the appliances, Zhong's interrogatory answer states that the "worn nature of the appliances was discovered after Ms. Zhong took possession of the premises." Zhong's deposition testimony revealed the following:

> Q: So when you walked through the house on five different occasions prior to the closing, you could see the microwave and the oven, correct?
> Zhong: Yeah.
> Q: And you knew that they were using them, right?
> Zhong: I didn't remember I checked the microwave or oven.
> Q· So you checked them and you could see that they were being -- they were in use, right?
> Zhong: Yeah. I didn't remember clear.
> Q: When you say, "I didn't remember," when are you talking about?
> Zhong: I'm talking about that I don't remember a year ago, the condition of the oven and the microwave now.
>
> . . . .
>
> Q: You knew that the Duderos lived in the house and that –
> Zhong: Yeah.
> Q: -- they used their microwave and their oven, right?
> Zhong: Yes.
> Q: Okay. Were there any appliances in the house at the time that you bought it that were brand new?
> Zhong: I don't re- -- I don't aware of it.
> Q: You don't know?
> Zhong: Yeah.

Zhong's deposition testimony stating that she recognized some "wear and tear" prior to closing was only in regard to the floors, not the appliances. As such, it was improper for the district court to rely on Zhong's testimony regarding the floors as a basis for granting summary judgment on the issue of appliances. Zhong's testimony does not demonstrate her knowledge of the state of the appliances prior to closing. As such, whether Zhong's reliance on the MLS listing was justified is a question of fact for the jury to decide. *See Greuling*, 690 N.W.2d at 760. When viewing the evidence presented in the light most favorable to Zhong, a genuine issue of material fact exists regarding whether she justifiably relied on the MLS listing stating the appliances were new.

Accordingly, we reverse the district court's grant of summary judgment on the negligent misrepresentation claim as it relates to the appliances.

### 2. Fraudulent misrepresentation

For claims of fraudulent misrepresentation, "[w]hether a party's reliance is reasonable is ordinarily a fact question for the jury unless the record reflects a complete failure of proof. Accordingly, to survive a motion for summary judgment, the nonmoving party must come forward with some facts supporting a conclusion of reasonable reliance." *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 321 (Minn. 2007) (citation omitted). "We have held that a party can reasonably rely on a representation unless the falsity of the representation is known or obvious to the listener. The listener is not under an obligation to conduct an investigation and thus may rely on the representation so long as it is not known by the listener to be false and is not obviously false." *Id.* (citation omitted).

### a. New flooring

As previously discussed, Zhong's deposition testimony reflects that, when visiting the property prior to closing, she became aware that the flooring in the house was not new, but that she still proceeded with the closing. Because Zhong was aware of any falsity of the representation of "new flooring" prior to closing on the property, Zhong's reliance on the MLS listing was not reasonable. *See id.*

Accordingly, we affirm the district court's grant of summary judgment on the fraudulent misrepresentation claim as it relates to the flooring.

### b. New appliances

As also previously discussed, Zhong's testimony does not demonstrate her knowledge of the state of the appliances prior to closing. As such, whether Zhong's reliance on the MLS listing was justified is a question of fact for the jury to decide. *See id.* When viewing the evidence presented in the light most favorable to Zhong, a genuine issue of material fact exists regarding whether she justifiably relied on the MLS listing stating the appliances were new.

Accordingly, we reverse the district court's grant of summary judgment on the fraudulent misrepresentation claim as it relates to the appliances.

### B. New back deck

The MLS listing provided by Strand stated that the property had a "new deck." After the inspection, Zhong asked Strand via email who built the deck for the seller, and whether they pulled a permit to do so. Strand replied via email copying and pasting his client's response: "The deck was there previously, I replaced decking, railing, stairs and treads. No

10

change to the structure, so no permit." After purchasing the property, Zhong alleges that she learned of several building code violations and defects in workmanship with the deck, and that when she contacted the City of Eagan, she was informed that no permit had been pulled. The city subsequently declared the deck unsafe to use.

On appeal, Zhong cites to two instances where Strand allegedly made false representations about the condition of the deck: (1) when he stated the deck was "new" on the MLS listing, and (2) when he relayed the Duderos' claim that the deck did not need a permit.

### 1. Negligent misrepresentation

The district court concluded that Minnesota Statutes section 82.68, subdivision 3(a) provided the standard of care, and the parties do not challenge that conclusion on appeal. The questions of whether Zhong's reliance on these statements was justified, and whether Strand failed to exercise reasonable care in making, or relaying, these statements to her are questions of fact for the jury to decide. *See Greuling*, 690 N.W.2d at 760 (stating that for a negligent misrepresentation claim, justifiable reliance is typically a fact question for a jury, and only "becomes a question of law if there is no evidence supporting a contrary conclusion"); *Domagala v. Rolland*, 805 N.W.2d 14, 29 (Minn. 2011) (stating that in negligence actions "[w]hether a defendant's chosen course of action satisfies the duty of reasonable care is a question for the jury").

Accordingly, we reverse the district court's grant of summary judgment on the negligent misrepresentation claim as it relates to the deck.

11

### 2. Fraudulent misrepresentation

It is also a question of fact whether the state of the deck was open to discovery upon a reasonable inquiry, and whether Strand knew, or should have known, of the misrepresentations made to the seller. *See Hommerding v. Peterson*, 376 N.W.2d 456, 459 (Minn. App. 1985); *see also Baker v. Surman*, 361 N.W.2d 108, 112 (Minn. App. 1985).

Accordingly, we reverse the district court's grant of summary judgment on the fraudulent representation claim as it relates to the deck.

### C. Mold

At the final walkthrough of the property, Zhong argues that she noticed a black discoloration on the drywall in the garage and that she asked Strand if it was mold, to which he replied that it was just a "water stain." After closing, Zhong discovered that the discoloration was black mold and that there was significant mold in the back wall of the garage.

The district court concluded that there was no evidence that Strand had information regarding the black mold in the garage that would have required him to disclose that information to Zhong, and that Strand, "in his capacity as an agent, is not required to make an independent investigation into facts which he has no reason to doubt." The district court further concluded that, even if Zhong had relied on Strand's statement, such reliance "was not reasonable nor justified."

On appeal, Zhong contends that the issue of whether her reliance on Strand's statement was reasonable or justified is a question of fact for the jury to decide. Zhong

also contends that her reliance on the statement was reasonable because Strand had repeatedly held himself out as a real estate expert.

### 1. Negligent misrepresentation

Zhong testified that she trusted Strand's statement that the black discoloration on the wall was only a water stain because Strand has 25 years of experience as a real estate agent, and because she believed him to know more than she did about such things. Because Zhong's testimony presents "evidence supporting a contrary conclusion" as to whether Zhong's reliance on Strand's statement was justified, the question should be decided by a jury. *See Greuling*, 690 N.W.2d at 760 (stating that for a negligent misrepresentation claim, justifiable reliance is typically a fact question for a jury, and only "becomes a question of law if there is no evidence supporting a contrary conclusion"). Further, the question of whether Strand failed to exercise reasonable care in making the statement that the discoloration was only a water stain without further investigation into the cause of the discoloration should be decided by a jury. *See Domagala*, 805 N.W.2d at 29 (stating that in negligence actions "[w]hether a defendant's chosen course of action satisfies the duty of reasonable care is a question for the jury").

Accordingly, we reverse the district court's grant of summary judgment on the negligent misrepresentation claim as it relates to the mold.

### 2. Fraudulent misrepresentation

It is undisputed that Strand made a false representation to Zhong when he stated the mold was only a "water stain." At her deposition, Zhong testified extensively that she relied on Strand's statements because of his experience as a real estate agent, and because

13

she believed him to know more than she did about such things. The facts establish that Strand made the representation on his own accord and without further investigation into the source of the discoloration. When viewing the evidence presented in the light most favorable to Zhong, reasonable persons could differ as to whether Strand should have known the representation was false at the time it was made. *See Baker*, 361 N.W.2d at 112 (explaining that, because reasonable persons could differ as to whether the real estate agent should have known the assurances given by the seller were false, the misrepresentation claim should have been submitted to the jury).

Further, Zhong's testimony reflects that she did not know Strand's statement to be false, but rather that she believed his representation that it was only a water stain. Because the falsity of Strand's statement was not known or obvious to Zhong, a jury could find that her reliance on Strand's representation was reasonable. *See Hoyt Props., Inc.*, 736 N.W.2d at 321. As such, whether Zhong's reliance on the Strand's statement was justified is a question of fact for the jury to decide. *See id.*

Accordingly, we reverse the district court's grant of summary judgment on the fraudulent misrepresentation claim as it relates to the mold.

**D. Number of offers received**

Zhong contends that Strand misrepresented the number of offers received on the property as Strand stated that "the Duderos had received eighteen offers for the property, when the true number was sixteen." The parties do not dispute that Strand incorrectly stated the number of offers received on the property.

14

The district court, relying on *Bryan v. Kissoon*, 767 N.W.2d 491, 496 (Minn. App. 2009), concluded that the legal measure of damages in this case is the difference between what was paid and the fair market value of the property had its true condition been known. The district court reasoned that the "number of offers received does not affect the actual value of a home" and concluded that it could not "ascertain any damages attributable to Strand's misstatement of the number of offers on the property, and thus, cannot provide Zhong any relief."

Zhong must present a genuine issue of material fact that she suffered damages to preclude summary judgment on her claims of negligent misrepresentation and fraud. *See Tschimperle*, 529 N.W.2d at 424; *Specialized Tours, Inc.*, 392 N.W.2d at 532. However, there has been no evidence presented as to the fair market value of the property. Because the court cannot ascertain damages attributable to Strand's misrepresentation of the number of offers received on the property (eighteen as opposed to sixteen), Zhong has not established a genuine issue of material fact as to damages.

Accordingly, we affirm the district court's grant of summary judgment on the negligent and fraudulent misrepresentation claims as they relate to the statement of the number of offers received on the property.

**II.    The district court erred by granting summary judgment to respondents on appellant's claims for breach of contract and promissory estoppel.**

Zhong argues that the district court erred by granting summary judgment to Strand and Collopy on her claims of breach of contract and promissory estoppel as there are

genuine issues of material fact as to the formation of a contract and as to whether Strand made an enforceable promise to her.

## A. Breach of contract

The district court concluded that based on the record "no contract was formed" and held that Zhong's breach of contract claim against Strand and Collopy failed. Zhong contends that the district court erred by concluding that the parties did not form a contract or an enforceable promise. Specifically, Zhong contends that she and Strand formed a contract for which Zhong agreed to "help complete the sales process" in exchange for Strand's promise not to sue or bring an ethics complaint against Zhong, that Zhong performed by stepping in as a purchaser of the home to ensure closing, and that Strand breached this contract by joining an ethics complaint against Zhong after closing.[5]

The elements of a breach of contract claim are (1) formation of a contract, (2) performance by the plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by the defendant. *Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). A plaintiff must show that a contract has been formed to prevail on a breach-of-contract claim. *Cargill*

---

[5] Neither party argued to the district court or argues on appeal that the alleged contract between Strand and Zhong is void as against public policy. Consistent with our role as an appellate court, we do not address the issue. *See Leuthard v. Independ. Sch. Dist. 912*, 958 N.W.2d 640, 649 (Minn. 2021) (noting that appellate courts "confine their review to issues that were presented and considered by the lower court") (quotation and ellipsis omitted); *Matter of NorthMet Permit to Mine Application Dated December 2017*, 959 N.W.2d 731, 755 (Minn. 2021) (noting that "under the principle of party presentation, [appellate courts] generally do not consider arguments raised for the first time on appeal" or issues not raised by the parties to an appeal) (quotation omitted).

*Inc. v. Jorgenson Farms*, 719 N.W.2d 226, 232 (Minn. App. 2006). It is generally a question of fact whether a contract exists. *Id.* "But if taking the record as a whole, a rational trier of fact could not find for the nonmoving party, summary judgment is appropriate." *Id.*

Zhong's deposition testimony stated the following:

> Q: I'm not asking whether it was reasonable for him to say that, I'm saying he told you that he -- that he or his clients would sue?
> Zhong: He say he and the seller will take me to the court, me and the buyer, Yan, to the court. And he will -- they will take me to realtor board and the department of commerce, wherever they can take me to. And if we don't -- I cannot hold my buyer close on time, I will destroy their seller's dream house, and they have a young baby.
> Q: But that was all true, right?
> Zhong: At that time I believed what he say.
> Q: Okay. You don't believe it was true now?
> Zhong: I didn't thinking that way. At that time, I think – I didn't doubt what he say. But I say, "Okay. If we close on time, will you still sue us?" And he say no, if you hold on your buyer to close on time, then we will – we will not take you to realtor court or department of commerce. But after closing, my broker, Gail, hastily get phone call from them. I don't know it's [the Duderos] or [Strand]. And my broker said for this transaction, there is a person call me, complain you over one hour and threaten to sue you to realtor board and department of commerce.

After the discussion between Zhong and Strand took place, Zhong sent an email to Strand stating, "we figure out a solution, we will buy it together and we close on time. [T]here is no change for seller, just put my name on the property as one of the buyer[s], I can deal with it after closing."

Zhong contends that Strand's statement to her constitutes an offer, and that the parties exchanged mutual promises whereby "[Strand] promise to forego any legal action against Zhong in exchange for Zhong's promise to close the sale of the Property on time." Deposition testimony is a proper means of presenting facts to the court on a summary judgment motion. *See Kessel v. Kessel*, 370 N.W.2d 889, 894 (Minn. App. 1985) (stating that when "probative admissions are contained in the deposition of a party who has the personal knowledge required by [Minn. R. Civ. P. 56.05], those facts should be available to assist the [district] court in determining whether a trial is necessary").

Zhong's deposition testimony and her email to Strand, where she agrees to step in as a co-buyer of the property, present more than a metaphysical doubt as to the factual issue of the formation of a contract between herself and Strand. *See DLH, Inc.*, 566 N.W.2d at 71. Zhong's testimony is supported by the unique circumstances of the case, whereby an agent of the buyer to a real estate transaction agrees to step into the transaction as a co-buyer of the property and then buy out the original buyer's ownership interest after closing. Strand and Collopy have not provided a persuasive explanation for why Zhong would have taken these actions but for the existence of an alleged contract between herself and Strand. There is also record evidence that Zhong, along with Pang, closed on the property, thereby performing the contract, and that the Duderos filed an ethics complaint against Zhong, which Strand joined, thereby breaching the contract. Viewing the evidence in the light most favorable to Zhong, she has presented evidence to create a genuine issue of material fact as to contract formation, performance, and breach.

In sum, Zhong's deposition testimony and subsequent email to Strand create a genuine issue of material fact as to whether the parties formed a contract. *See Knezevich v. Dress*, 399 N.W.2d 219, 220 (Minn. App. 1987). Zhong has also presented evidence to create a genuine issue of material fact as to performance and breach. Because reasonable persons could draw different conclusions from the evidence presented, it was improper for the district court to grant summary judgment on Zhong's breach of contract claim. *See Illinois Farmers Ins. Co. v. Tapemark Co.*, 273 N.W.2d 630, 634 (Minn. 1978).

## B. Promissory estoppel

The district court concluded that there was "no evidence that Strand promised anything to Zhong" and that "[t]he record shows that Zhong entered into the transaction as a buyer because of the condition of the home, not because it would somehow avoid lawsuits and/or ethical complaints." Zhong contends that the record reflects Strand made an enforceable promise to her, that a reasonable jury could determine that Strand pushed for reliance, and that Zhong reasonably relied on this promise.[6]

On appeal from summary judgment on a promissory estoppel claim, we must determine whether: "(1) the [district] court misapplied the promissory estoppel doctrine or (2) the [district] court ignored issues of material fact raised by [the] appellant." *Faimon v. Winona State Univ.*, 540 N.W.2d 879, 882 (Minn. App. 1995), *rev. denied* (Minn. Feb. 9, 1996). "Promissory estoppel is an equitable doctrine that implies a contract in law where

---

[6] Neither party argued to the district court or argues on appeal that the alleged promise between Strand and Zhong is void as against public policy due to the nature of the agreement. For the reasons discussed in n.5 above, we decline to address this issue on appeal.

none exists in fact." *Martens v. Minn. Min. & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000) (quotation omitted). The elements of promissory estoppel are (1) a clear and definite promise; (2) the promisor intended to induce reliance and such reliance occurred; and (3) the promise must be enforced to prevent injustice. *Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 152 (Minn. 2001).

### 1. Promise

The promise must have "sufficient clarity and definiteness to determine if there has been performance." *Martens*, 616 N.W.2d at 746. Zhong's deposition testimony reflects that she asked Strand, "If we close on time, will you still sue us?" And the testimony shows that Strand replied, "[N]o, if you hold on your buyer to close on time, then we will – we will not take you to realtor court or department of commerce." Based on Zhong's testimony, the district court's conclusion that there is "no evidence that Strand promised anything to Zhong" is unsupported by the record. When viewing the evidence presented in the light most favorable to Zhong, there is a genuine dispute of material fact regarding whether a promise was made. Because reasonable persons could draw different conclusions as to whether a promise was made, it was improper for the district court to grant summary judgment based on this element of the claim. *See Illinois Farmers Ins. Co.*, 273 N.W.2d at 634.

### 2. Reliance

The promisor must have intended to induce reliance, and such reliance must have occurred. *Olson*, 628 N.W.2d at 152. Zhong contends that, based on Strand's alleged

statements, that "a reasonable jury could determine that Strand pushed for reliance, and that Zhong reasonably so relied."

Zhong's deposition testimony reflects that, on three occasions, Strand threatened that if she could not hold her buyer to close on time, that he would sue Zhong and Pang and take Zhong "to the realtor board and department of commerce." Zhong stated that she otherwise had no intention of buying the property, but she stepped in as a buyer "unwillingly" due to Strand's threats. The testimony also reflects that Strand has 25 years of experience in the real estate industry whereas Zhong had only six or seven years of experience. Finally, Strand's deposition testimony reflects that the ethics complaint against Zhong was her second ethics complaint, and that if someone receives "two ethics complaints in a certain time frame, they take your license . . . away."

When viewing the evidence presented in the light most favorable to Zhong, there is a genuine dispute of material fact regarding whether Strand should have reasonably expected Zhong to take action on the promise, and whether Zhong relied on the promise when stepping in as a co-buyer to the transaction. Because reasonable persons could draw different conclusions as to reliance, it was improper for the district court to grant summary judgment based on this element of the claim. *See Ill. Farmers Ins. Co.*, 273 N.W.2d at 634.

### 3. Injustice

The third element of a promissory estoppel claim—whether a promise must be enforced to prevent an injustice—"is a legal question for the court, as it involves a policy decision." *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn. 1992). "Numerous considerations enter into a judicial determination of injustice, including the reasonableness

21

of a promisee's reliance and a weighing of public policies in favor of both enforcing bargains and preventing unjust enrichment." *Faimon*, 540 N.W.2d at 883.

When viewing the evidence presented in the light most favorable to Zhong, it was objectively reasonable for her to have relied on Strand's statement that he would not pursue an ethics complaint against her if the sale of the property closed. This determination is supported by Strand's significantly greater real estate experience compared to Zhong and the result that a second ethics complaint could have had on Zhong's real estate license. Further, we recognize that a contrary determination would result in Strand's unjust enrichment whereby he could leverage an ethics complaint against Zhong to induce her to step in as a co-buyer of the property but nonetheless proceed with the ethics complaint after closing. In sum, public policy weighs in favor of enforcing the bargain between Strand and Zhong. *See Cohen*, 479 N.W.2d at 391. As such, the promise must be enforced to prevent injustice. *See Faimon*, 540 N.W.2d at 883.

Accordingly, it was improper for the district court to grant summary judgment on Zhong's promissory estoppel claim.

**Affirmed in part, reversed in part, and remanded.**