_____

No. 96-1787
_____

Ringier America, Inc.,                  *
                                        *
     Plaintiff - Appellant,           *
                                        *
                                        *  Appeal from the United States
     v.                               *  District Court for the
                                        *  District of Minnesota
Land O'Lakes, Inc.,                     *
                                        *
     Defendant - Appellee.            *

_____

Submitted: November 21, 1996

Filed: February 7, 1997
_____

Before BEAM and LOKEN, Circuit Judges, and MOODY,[*] District Judge.
_____

LOKEN, Circuit Judge.

    Ringier America, Inc., printed a series of cookbooks under printing services contracts with publisher Russ Moore & Associates ("RMA") for the benefit of RMA's customer, Land O'Lakes, Inc. ("LOL").  RMA failed to pay Ringier some $155,000 invoiced under those contracts.  Ringier commenced this diversity action, asserting joint venture, unjust enrichment, and quantum meruit claims against LOL.  The district court[1] granted summary judgment in favor of LOL, and Ringier appeals.  Having reviewed the grant of summary judgment de novo, we affirm.

_____

    [*]The HONORABLE JAMES M. MOODY, United States District Judge for the Eastern District of Arkansas, sitting by designation.

    [1]The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minnesota.

**I.**

Ringier claims that a December 5, 1991, agreement between RMA and LOL created a joint venture, permitting Ringier to sue LOL, a principal, for unpaid services performed for the joint venture. In the December 1991 agreement, RMA and LOL undertook "to develop, publish, promote and market" a series of magazine-style cookbooks referred to as "Classic Cookbooks," using LOL trademarks and tradenames. Under the agreement, LOL determined when to produce each cookbook, provided the recipes, and retained approval rights over the final product. RMA agreed to provide the essential publishing services -- writing, editing, layout, illustrations, printing, binding, packaging, shipping, "and all other services necessary to make the Classic Cookbook project a 'turn key' operation for LOL." For these services, LOL agreed to pay RMA a specified price per unit, one-half payable during the production process and the remainder "within thirty (30) days of LOL's review and approval" of each completed cookbook. RMA agreed to reduce the agreed per unit prices by twenty percent in return for twenty percent of LOL's cookbook profits. Paragraph eighteen of the agreement defined the parties' relationship:

> This Agreement is not intended and shall not be construed to constitute either party as the employee, joint venture or franchising partner, agent or legal representative of the other. Neither party shall have any authority, express, implied or apparent, to assume or create any obligations on behalf of or in the name of the other party.

Printing was the biggest expense in publishing the cookbooks, and RMA chose Ringier for this task. In March 1992, and again in September 1993, RMA and Ringier entered into written agreements providing that RMA would pay Ringier for printing services which satisfied RMA's "requirements for production" of the Classic Cookbooks. LOL was not a party to either agreement. Ringier reviewed the RMA-LOL contract before contracting with RMA.

Under RMA's arrangement with LOL, RMA also marketed the Classic Cookbooks. In performing that function, RMA collected payments from distributor Kable News Company for cookbooks sold through grocery store magazine racks.[2] After the initial cookbooks were distributed, RMA began using revenues from cookbook sales -- which it had agreed to remit to LOL -- to pay Ringier's invoices for cookbooks still in production, despite the fact that LOL's payments to RMA under the December 1991 agreement were timed to permit RMA to stay current with vendors such as Ringier.

The Classic Cookbooks were not a financial success, which exacerbated RMA's cash flow problems. By the summer of 1993, RMA was seriously delinquent in remitting sales revenues. LOL demanded a change -- immediate remittance of advances on sales -- rejecting RMA's request for a "float" so that RMA could promptly pay Ringier invoices. After this change was implemented, RMA failed to pay Ringier for the October 1993 cookbook. LOL then paid Ringier directly for at least one more cookbook before retaining another commercial printer to continue the project. Ringier commenced this lawsuit when neither RMA nor LOL would pay its additional $155,000 claim for unpaid printing invoices to RMA.

Applying Minnesota law, the district court granted summary judgment in favor of LOL. It rejected Ringier's joint venture claim because the December 1991 agreement expressly disclaimed a joint venture relationship, and because the essential element of joint control was missing. It rejected Ringier's claims for unjust enrichment and quantum meruit because such relief is not available when the rights of the parties are governed by contract.

---

[2]Apparently, the December 1991 agreement between RMA and LOL did not define their total relationship regarding the Classic Cookbooks project. For example, the record on appeal refers to but does not include a March 1992 agreement between RMA, LOL, and Kable News relating to distribution. Because Ringier as plaintiff has the burden to prove the alleged joint venture, we assume the missing contract does not support its joint venture theory.

**II.**

On appeal, Ringier first argues that summary judgment is improper on its joint venture claim because the substance of the RMA-LOL relationship, not the contract disclaimer, controls whether a joint venture was created, and because the issue of joint control is also a fact question for the jury. A joint venture is a species of partnership. See generally REUSCHLEIN & GREGORY, HANDBOOK ON THE LAW OF AGENCY AND PARTNERSHIP § 266 (1979). Under Minnesota law, "the rules and principles applicable to a partnership relation, with few if any material exceptions, govern and control the rights, duties, and obligations of the parties [to a joint venture]." Rehnberg v. Minnesota Homes, Inc., 52 N.W.2d 454, 457 (Minn. 1952).

The general rule is that parties who are "partners as between themselves [are] partners as to third persons." Moore v. Thorpe, 158 N.W. 235, 238 (Minn. 1916). Thus, Ringier properly focuses on whether the December 1991 agreement created a joint venture between RMA and LOL. However, that is not the end of the inquiry. To bind the partnership, a partner must act within the scope of his actual authority, or within the scope of apparent authority with a party unaware that actual authority is more limited. See Minn. Stat. § 323.08 (partner carrying on partnership business binds the partnership "unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom that partner is dealing has knowledge of the fact that that partner has no such authority"); Moore, 158 N.W. at 238; First Nat'l Bank v. Stadden, 115 N.W. 198, 199 (Minn. 1908).

In this case, Ringier reviewed the RMA-LOL contract before agreeing to print the Classic Cookbooks for RMA. The RMA-LOL contract expressly stated that the parties were not joint venturers and that RMA had no "authority, express, implied or apparent, to assume or create any obligations on behalf of or in the name of [LOL]." Thus, Ringier contracted with RMA individually, knowing

-4-

that RMA had no authority to bind LOL. In these circumstances, Ringier's joint venture claim fails as a matter of law. "Where one, with knowledge of a partnership elects to contract with an individual member of the partnership upon that member's exclusive credit, even though the contract is for the benefit of the partnership, the member contracted with and he alone is liable under the contract." Nelson v. Seaboard Sur. Co., 269 F.2d 882, 891 (8th Cir. 1959), followed in Tschimperle v. Independent State Bank, 1992 WL 138621 (Minn. App. 1992) (unpublished).

We also agree with the district court that RMA and LOL were independent contractors, not principals in a joint venture. A joint venture requires proof of contribution, joint control, sharing of profits, and a joint venture contract. See Rehnberg, 52 N.W.2d at 457. Here, RMA controlled its own activities, but LOL controlled the project, determining how many cookbooks to publish, when to publish, what recipes to include, and so forth. In addition, while RMA received twenty percent of LOL's profits, that was in lieu of part of its publishing fee, which is not profit sharing "in the manner consistent with a status of a joint adventure." Id. at 457. Finally, while we agree that the contractual disclaimer is not dispositive, it is strong evidence that the parties did not intend that their cooperative undertaking create a partnership or joint venture.

## III.

Ringier further argues that it is entitled to equitable relief because LOL reaped the benefit of printing services for which Ringier was not paid. The district court rejected this claim because Ringier's claim for payment was governed by an express contract. Ringier strives mightily to distinguish the cases relied upon by the district court and LOL, but Ringier cites no authority -- from Minnesota or elsewhere -- allowing unjust enrichment or quantum meruit recovery in a similar situation.

We conclude there are fatal flaws in Ringier's unjust enrichment theory.  First, LOL was not unjustly enriched -- it received printing services as part of the benefit of its bargain with RMA, a bargain LOL did not breach.  Indeed, LOL was not enriched at all -- its relationship with RMA ended with RMA owing LOL some $355,000.  At most, LOL adversely affected Ringier by offsetting LOL's obligation to pay RMA for current costs of production against amounts RMA had failed to remit for sales of completed cookbooks.  But that offset was not unjust as between RMA and LOL, and Ringier as an unsecured RMA creditor did not perfect a superior right to the offset funds.

Second, Ringier made the decision to deal exclusively with RMA, knowing the contractual relationship between RMA and LOL.  Minnesota courts do not apply unjust enrichment to protect a party from the consequences of its bad bargain, even when a third party has received some benefit from the aggrieved party's performance.  See Cox v. First Nat'l Bank, 415 N.W.2d 385, 389 (Minn. App. 1987) ("unjust enrichment was not created to protect parties from their own bad bargains"); First Nat'l Bank v. Ramier, 311 N.W.2d 502, 504 (Minn. 1981).  Moreover, a claim of unjust enrichment requires proof that plaintiff conferred benefits unknowingly or unwillingly.  See Holmes v. Torguson, 41 F.3d 1251, 1256 (8th Cir. 1994).  Here, Ringier knew LOL would purchase the cookbooks from RMA, yet Ringier dealt exclusively with RMA.

The judgment of the district court is affirmed.

A true copy.

    Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.