Wilhelmina M. Wright, United States District Judge
This lawsuit arises from a dispute between two companies over work product created for a contract pitch. Plaintiff Goodbye Vanilla, LLC (Goodbye Vanilla) is a marketing consulting company with entertainment industry experience. Defendant Aimia Proprietary Loyalty U.S. Inc.[1] (Aimia) is a business that runs loyalty programs. After the relationship between Goodbye Vanilla and Aimia soured, Goodbye Vanilla initiated this lawsuit. Aimia now moves for summary judgment on all counts. (Dkt. 99.) For the reasons addressed below, the Court grants in part and denies in part Aimia's motion.
BACKGROUND
Drew Pearson, the founder of Goodbye Vanilla, was professionally acquainted with Chris McLaren, an Aimia employee. On August 1, 2014, Aimia received a request for proposal from Sony Pictures Entertainment (Sony) inviting Aimia to submit a pitch for a contract to create a computer-based loyalty program for the Wheel of Fortune television program. As a result of the professional acquaintance between McLaren and Pearson, Aimia invited Goodbye Vanilla to participate in the Wheel of Fortune pitch to Sony. The parties executed a written mutual nondisclosure agreement governing the use and exchange of confidential information, but the parties did not execute a written contract addressing the scope of work that each party would perform on the pitch to Sony *819 or on any ensuing project with Sony. Consequently, the parties dispute the precise nature and scope of Goodbye Vanilla's participation in the pitch process.
Goodbye Vanilla alleges that the parties agreed it would provide "ongoing expertise and consulting services ... regarding television and entertainment marketing strategies, programs, and systems" during both the pitch process and the duration of Aimia's relationship with Sony. Aimia argues that it invited Goodbye Vanilla to contribute "TV industry-related advisory services" for the Sony pitch. One specific service that the parties agree Goodbye Vanilla provided was research on how to use Nielsen Data Fusion, an analytical modeling tool that provides consumer and market data. Goodbye Vanilla also participated in Aimia's in-person pitch presentation to Sony in California.
On December 4, 2014, Aimia learned that it won the contract from Sony. Aimia and Sony did not execute a scope of work agreement at that time. At some point, Aimia became aware that Sony was not interested in contracting for the services attributed to Goodbye Vanilla, and Aimia instructed Goodbye Vanilla in March 2015 to put its Sony-related work on hold. The parties' relationship disintegrated. Goodbye Vanilla asserts that Aimia intentionally pushed Goodbye Vanilla out of the Sony project, contravening the parties' unwritten agreement. Aimia contends that Sony contracted for only a portion of Aimia's proposed services, and it was Sony's choice not to include Goodbye Vanilla's services in the contract between Sony and Aimia. Goodbye Vanilla subsequently commenced this lawsuit.
In its complaint, Goodbye Vanilla asserted nine counts against Aimia, three of which it subsequently dismissed.[2] Of the remaining counts, Count III alleges misappropriation of trade secrets under the Minnesota Uniform Trade Secrets Act, Minn. Stat. §§ 325C.01 et seq. Count IV asserts a breach-of-contract claim alleging that Aimia violated the nondisclosure agreement. Counts V and VI, respectively, allege breach of a joint-venture agreement and breach of fiduciary duty arising from a joint-venture agreement. And Counts VII and VIII allege promissory estoppel and unjust enrichment. Aimia moves for summary judgment, and Goodbye Vanilla opposes the motion.
ANALYSIS
I. Legal Standard
Summary judgment is proper when the record establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When "the evidence is such that a reasonable jury could return a verdict for the non-moving party," a genuine dispute exists. Id. However, " 'the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment' if there is 'no genuine issue of material fact.' " Vacca v. Viacom Broad. of Mo., Inc. , 875 F.2d 1337, 1339 (8th Cir. 1989) (quoting Anderson , 477 U.S. at 247-48, 106 S.Ct. 2505 ). A nonmoving party asserting that a fact is genuinely disputed must cite to "particular parts of materials in the record" that support the assertion and demonstrate the existence of specific facts that create a genuine issue for trial. Fed. R. Civ. P. 56(c)(1)(A) ; accord *820 Krenik v. Cty. of Le Sueur , 47 F.3d 953, 957 (8th Cir. 1995). When deciding a motion for summary judgment, a court construes the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in favor of that party. See Windstream Corp. v. Da Gragnano , 757 F.3d 798, 802-03 (8th Cir. 2014).
II. Improper Use and Disclosure of Confidential Information
Goodbye Vanilla asserts that Aimia misappropriated Goodbye Vanilla's trade secrets, in violation of Minnesota law, and misused Goodbye Vanilla's proprietary and confidential information, in violation of the parties' nondisclosure agreement. Each claim is analyzed in turn.
A. Misappropriation of Trade Secrets
Although Aimia maintains that it neither received Goodbye Vanilla's trade secrets nor misappropriated any confidential information, Goodbye Vanilla contends that whether the information it shared with Aimia includes trade secrets is a disputed question of fact. The Minnesota Uniform Trade Secrets Act (MUTSA) protects certain types of information it defines as trade secrets. Electro-Craft Corp. v. Controlled Motion, Inc. , 332 N.W.2d 890, 897 (Minn. 1983) ; see also Minn. Stat. §§ 325C.01 et seq. MUTSA defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process." Minn. Stat. § 325C.01, subd. 5. To establish that information is a trade secret under MUTSA, a party must demonstrate that (1) the information is neither generally known nor readily ascertainable, (2) the information derives independent economic value from its secrecy, and (3) the plaintiff has made reasonable efforts to maintain confidentiality. Gordon Emp't, Inc. v. Jewell , 356 N.W.2d 738, 741 (Minn. Ct. App. 1984) (citing Electro-Craft , 332 N.W.2d at 899 ). Misappropriation is the improper acquisition, disclosure, or use of a trade secret. Electro-Craft , 332 N.W.2d at 897. The plaintiff must establish both that a trade secret exists and that the defendant has misappropriated that trade secret. Widmark v. Northrup King Co. , 530 N.W.2d 588, 592 (Minn. Ct. App. 1995). "Without a proven trade secret there can be no action for misappropriation." Electro-Craft , 332 N.W.2d at 897. "Failure to identify the trade secrets with sufficient specificity renders the Court powerless to enforce any trade secret claim." Porous Media Corp. v. Midland Brake Inc. , 187 F.R.D. 598, 600 (D. Minn. 1999).
Goodbye Vanilla alleges that Aimia acquired trade secrets from Goodbye Vanilla that Aimia wrongfully disclosed and used for its benefit after "cutting [Goodbye Vanilla] out of the Sony deal." Goodbye Vanilla argues that its "proprietary information, industry expertise, and work product," including its experience with Nielsen Data Fusion,[3] are trade secrets. To support its claim that its research and expertise on Nielsen Data Fusion constitute trade secrets, Goodbye Vanilla relies on the deposition testimony of its CEO, Drew Pearson. Pearson testified that he worked with a consultant and others in the industry to research Nielsen Data Fusion, and he subsequently sent his research to Aimia. The record contains a one-page email that Pearson sent to Aimia employee Chris McLaren, which includes brief quotations about Nielsen Data Fusion and recommendations on how to use it. This one-page email is the only specific information Goodbye Vanilla identifies as a trade secret protected by MUTSA.
*821 Goodbye Vanilla fails to establish how this one-page email containing quotations and recommendations is a trade secret protected by MUTSA. See, e.g., Electro-Craft , 332 N.W.2d at 900 ("The law of trade secrets will not protect talent or expertise, only secret information."); Jostens, Inc. v. Nat'l Comput. Sys., Inc. , 318 N.W.2d 691, 699 (Minn. 1982) ("Simply to assert a trade secret resides in some combination of otherwise known data is not sufficient, as the combination itself must be delineated with some particularity in establishing its trade secret status."); see also Harley Auto. Grp., Inc. v. AP Supply, Inc. , No. 12-1110, 2013 WL 6801221, at *8 (D. Minn. Dec. 23, 2013) ("Defendants' use of readily ascertainable industry contacts does not suggest the misappropriation of a trade secret.").
Even assuming without deciding that Goodbye Vanilla's Nielsen Data Fusion information is a trade secret under MUTSA, Goodbye Vanilla identifies no fact in the record that supports its contention that Aimia misappropriated the information. Moreover, it is abundantly clear from Pearson's email that Goodbye Vanilla compiled the information for the specific purpose of sending it to Sony. And Goodbye Vanilla identifies nothing in the record that supports the claim that there is ongoing misuse or misappropriation of its alleged trade secret.
No facts in the record demonstrate a genuine dispute about whether Aimia misappropriated any Goodbye Vanilla trade secret. Therefore, Aimia's motion for summary judgment is granted as to Count III, Goodbye Vanilla's misappropriation of trade secrets claim.
B. Violation of the Nondisclosure agreement
The parties do not dispute that the nondisclosure agreement, which provides that it is governed by Minnesota law, is binding. Count IV of Goodbye Vanilla's complaint alleges that Aimia improperly used Goodbye Vanilla's proprietary information during Aimia's pitch to Sony and that Aimia continues to use and share that information, all in violation of the nondisclosure agreement. In support of summary judgment, Aimia argues that Goodbye Vanilla fails to identify any confidential information shared or used in violation of the nondisclosure agreement.
Minnesota law distinguishes between a claim based on misappropriation of trade secrets and a claim based on breach of contract. Loftness Specialized Farm Equip., Inc. v. Twiestmeyer , 742 F.3d 845, 850 (8th Cir. 2014). The nondisclosure agreement's definition of confidential information determines what information can serve as the basis of a claim alleging a breach of the nondisclosure agreement. See id.
Here, the nondisclosure agreement defines "confidential information" as either party's "finances, research, development, business activities, products, services, or technical knowledge." Each party may use the other's confidential information "only in connection with the business purpose," defined as the "inten[t] to discuss the formation of a business relationship with each other, [formation of] such a business relationship, and [participation] in business activities during such business relationship." The nondisclosure agreement states that each party will protect the other's information "in the same manner it protects the confidentiality of its own proprietary and confidential information," and "will not disclose the Confidential Information except to its employees and agents who need to know the Confidential Information in order to achieve the Business Purpose." When the business purpose terminates, *822 each party must return or destroy the other party's confidential information.
Goodbye Vanilla alleges that Aimia violated the nondisclosure agreement in three ways: by presenting Goodbye Vanilla's confidential information to Sony during the pitch process, by sharing Goodbye Vanilla's confidential information with Aimia employees who did not work on the Sony pitch, and by continuing to use Goodbye Vanilla's confidential information after the parties' relationship ended. But Goodbye Vanilla identifies no facts in the record that support these allegations.
Goodbye Vanilla contends that Aimia disclosed confidential information to Sony during the pitch process by sending Sony a letter containing Goodbye Vanilla's Nielsen Data Fusion research. Pearson testified that he sent the research to McLaren, an Aimia employee, who "pasted" that research into a letter with Aimia's letterhead and sent the letter to Sony on November 17, 2014. Although the record does not contain the letter, the record includes the email that transmitted the research to McLaren. This email states that the recommendations are for Sony and directs McLaren to "put [the research] in Aimia language." Even if the contents of the email meet the nondisclosure agreement's definition of confidential information, there is no fact in the record that supports the position that the disclosure of that information was improper.
Goodbye Vanilla next argues that Aimia improperly shared Goodbye Vanilla's confidential information with Aimia employees who were not working on the Sony pitch. Pearson testified that McLaren promised to send the pitch materials to an Aimia employee who was not assigned to the Sony pitch team, in contravention of the nondisclosure agreement's prohibition on internal disclosure of confidential information. But without more, Pearson's testimony does not create a genuine dispute as to whether the allegedly promised improper disclosure occurred. The record does not contain the email exchange, and Goodbye Vanilla produces no other fact that supports its allegation that Aimia improperly disclosed to its employees Goodbye Vanilla's confidential information.
Goodbye Vanilla also contends that Aimia continues to use its confidential information despite the dissolution of the parties' relationship. The only basis for this allegation is Pearson's deposition testimony. But Pearson neither identifies the information he believes Aimia continues to use nor states for what purpose he believes Aimia uses the information. Goodbye Vanilla identifies no other evidence in support of this contention.
In summary, Goodbye Vanilla has not identified any evidence to support its claim that Aimia improperly disclosed confidential information in violation of the parties' nondisclosure agreement.[4] Aimia's motion for summary judgment is granted as to Count IV, Goodbye Vanilla's breach-of-contract claim arising from the nondisclosure agreement.
III. Joint-venture claims
Goodbye Vanilla asserts two claims based on the existence of a joint-venture agreement: first, Goodbye Vanilla asserts *823 that the parties entered into a joint-venture agreement that Aimia breached in violation of Minnesota law, and second, Goodbye Vanilla asserts that Aimia's alleged breach of the joint-venture agreement also is a breach of Aimia's fiduciary duty to Goodbye Vanilla. Aimia argues that, because it never entered into a joint-venture agreement with Goodbye Vanilla, the claims must fail as a matter of law. Goodbye Vanilla counters that summary judgment must be denied because the existence of a joint venture must be determined by the finder of fact.
Four elements establish the existence of a joint venture: "(1) contribution by both parties; (2) joint proprietorship and control; (3) sharing of profits, but not necessarily losses ...; and (4) a contract, express or implied." Westphal v. Anderson , 347 N.W.2d 85, 87 (Minn. Ct. App. 1984) (citing Rehnberg v. Minn. Homes , 236 Minn. 230, 52 N.W.2d 454, 457 (1952) ). The trier of fact typically determines the existence of a joint venture, Grain Dealers Mut. Ins. Co. v. Cady , 318 N.W.2d 247, 250 (Minn. 1982), but "where no competent evidence will support a finding of joint venture, the district court may decide the issue as a matter of law," Duxbury v. Spex Feeds, Inc. , 681 N.W.2d 380, 390 (Minn. Ct. App. 2004). A dearth of evidence on any one of the four elements defeats a joint-venture claim as a matter of law. See id. (affirming determination of no venture as a matter of law because plaintiff did not establish profit-sharing). Here, there is no competent evidence as to the second element, joint proprietorship and control.
Joint proprietorship and control is "a proprietary interest and right of mutual control over the subject matter of the property engaged in the venture." Powell v. Trans Glob. Tours, Inc. , 594 N.W.2d 252, 256 (Minn. Ct. App. 1999). "To satisfy the joint proprietorship and control requirement, a party must show that the parties had a near equal right to control the business operations of the venture." P.I.M.L., Inc. v. Fashion Links, LLC , 428 F.Supp.2d 961, 971 (D. Minn. 2006). Merely working together in some capacity is insufficient to establish joint control. See Powell , 594 N.W.2d at 256 (determining no joint control as a matter of law because neither party controlled the other's operations).
In Dorsey & Whitney LLP v. Grossman , the Minnesota Court of Appeals concluded that joint control did not exist as a matter of law when a patent law firm "exercised a substantial degree of influence regarding [its client's] licensing decisions" because the firm's actions were "part of the normal course of an attorney's counseling relationship with the client." 749 N.W.2d 409, 416 (Minn. Ct. App. 2008). The Court of Appeals determined that "it would be expected, even necessary, for Dorsey to recommend certain courses of action as part of its legal representation," but "such conduct does not amount to joint control." Id. The Eighth Circuit affirmed a grant of summary judgment on similar grounds in Ringier America, Inc. v. Land O'Lakes, Inc. 106 F.3d 825 (8th Cir. 1997) (applying state law). In Ringier , a printing press brought a joint-venture claim against a cookbook publisher over a payment dispute. Id. at 827. The Eighth Circuit determined there was no joint venture as a matter of law on the basis of, among other things, the lack of joint control: "[The printing press] controlled its own activities, but [the cookbook publisher] controlled the project, determining how many cookbooks to publish, when to publish, what recipes to include, and so forth." Id. at 828.
The relationship between Goodbye Vanilla and Aimia is similar to that of the law firm and its client in Dorsey , or the printing *824 press and the cookbook publisher in Ringier . Goodbye Vanilla controlled its activity by deciding how to advise Aimia on the entertainment industry, but Aimia controlled the final product. Sony directed its request for proposal to Aimia, and Aimia invited Goodbye Vanilla to contribute to the pitch based on Goodbye Vanilla's specialized knowledge. Goodbye Vanilla does not identify any facts in the record[5] suggesting that Goodbye Vanilla had the authority to make independent decisions about the pitch or to exercise control over the pitch process.
Goodbye Vanilla has not demonstrated the existence of a genuine dispute of material fact as to whether it had a right of mutual control over the pitch. Because it cannot establish a necessary element of a joint venture, Goodbye Vanilla's joint-venture claim fails as a matter of law. Moreover, Goodbye Vanilla concedes that its breach-of-fiduciary-duty claim relies solely on the existence of a joint venture. For that reason, Goodbye Vanilla's breach-of-fiduciary-duty claim also fails as a matter of law.
Accordingly, Aimia's motion for summary judgment is granted as to Count V, Goodbye Vanilla's claim for breach of a joint-venture agreement, and Count VI, Goodbye Vanilla's claim for breach of fiduciary duty.
IV. Equitable Remedies
Finally, Aimia seeks summary judgment on Goodbye Vanilla's equitable claims for promissory estoppel and unjust enrichment. Goodbye Vanilla responds that questions of material fact remain as to these claims that must be determined by the jury.[6]
A. Promissory Estoppel
Goodbye Vanilla argues that Aimia promised to compensate Goodbye Vanilla for its contribution to the Sony pitch and to provide an ongoing role in Aimia's work with Sony. Aimia contends that it made no promise to Goodbye Vanilla about how the parties would proceed if Sony contracted for only a portion of Aimia's proposed services.
"To state a claim for promissory estoppel, the plaintiff must show that (1) there was a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent injustice." Park Nicollet Clinic v. Hamann , 808 N.W.2d 828, 834 (Minn. 2011). "[A] promise must be 'clear and definite' to trigger promissory estoppel analysis of its enforcement." Faimon v. Winona State Univ. , 540 N.W.2d 879, 882 (Minn. Ct. App. 1995) (quoting Ruud v. Great Plains Supply , 526 N.W.2d 369, 372 (Minn. 1995) ). Statements must be "sufficiently *825 clear and definite to be enforceable." Martens v. Minn. Mining & Mfg. Co. , 616 N.W.2d 732, 746 (Minn. 2000) ; compare Faimon , 540 N.W.2d at 882 (determining that statement "[i]f a tenure track position should be approved, it would not be before 1994-95," is a clear and definite promise) with Ruud , 526 N.W.2d at 372 (determining that statement "good employees are taken care of" is "simply not 'clear and definite' enough to support a claim for promissory estoppel"). A plaintiff also must show that the promise "reasonably induce[d] the promisee's action." Faimon , 540 N.W.2d at 882. "[T]he reasonableness of a promisee's reliance on a promise is a determination of fact for the jury." Id.
Here, Goodbye Vanilla argues that the following email exchange, which occurred in August 2014, establishes an enforceable promise that Goodbye Vanilla would receive a revenue-generating role if Aimia's pitch to Sony was successful.
Goodbye Vanilla :
To make sure all parties are clear as to how we will proceed, I would like to make sure [sic] a few points to ensure a smooth partnership. For example,
• It is understood and agreed upon that if AIMIA wins the pitch with Sony Pictures Entertainment, Goodbye Vanilla will be guaranteed a [revenue-generating] role on the project and/or will be compensated for their efforts on the pitch (commission structure)
....
We will need to formulate either a Letter of Understanding or formal contract between Goodbye Vanilla and AIMIA to ensure we have an equitable, well articulate [sic] working partnership that is mutually beneficial.
Aimia :
I think these items will be OK from our POV. Agreed re: development of such language.
(Brackets in original.) The plain language of these emails does not reflect that Aimia made a clear and definite promise. Goodbye Vanilla argues that Aimia's statement-"I think these items will be OK from our POV"-constitutes a promise because it incorporated the terms in Goodbye Vanilla's email. But in Ruud , the Minnesota Supreme Court rejected a similar argument based on an employer's response to an employee's question about job security. 526 N.W.2d at 370-72. The court concluded that the employer's response that "good employees are taken care of," and that the employee would be offered a similar position at a new location if his location closed, did not constitute the type of clear and definite promise that could support a claim for promissory estoppel. Id. at 372. Here, as in Ruud , Aimia's response that "these items will be OK from our POV," is neither clear nor definite.
Moreover, even if Aimia did incorporate the terms of Goodbye Vanilla's initial statement in its response, it remains that the terms provided by Goodbye Vanilla are not clear and definite terms. The initial email does not specify the services Goodbye Vanilla would provide in the event of a successful bid, how much revenue Goodbye Vanilla would be entitled to receive for its unidentified services, or whether the revenue would come from Aimia or Sony. A statement's terms must be sufficiently clear and definite to be enforceable. Martens , 616 N.W.2d at 746. The statement in Goodbye Vanilla's email does not meet that standard.
If a party seeking relief cannot establish a clear and definite promise, a court need not evaluate the remaining elements of promissory estoppel. Id. As the relevant email exchange cannot support a claim for promissory estoppel, and Goodbye Vanilla has identified no other alleged promise, the promissory-estoppel claim *826 fails. Aimia's motion for summary judgment is granted as to Count VII, promissory estoppel.
B. Unjust Enrichment
Goodbye Vanilla argues that its contribution to the success of Aimia's pitch is a benefit for which it has not been sufficiently compensated. Aimia contends that, because Goodbye Vanilla did not help Aimia secure payment from Sony, Goodbye Vanilla conferred no benefit and its unjust-enrichment claim must fail.
To establish an unjust-enrichment claim, a plaintiff must demonstrate a benefit conferred, a defendant's knowing acceptance of the benefit, and the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable to provide no compensation. Dahl v. R.J. Reynolds Tobacco Co. , 742 N.W.2d 186, 195 (Minn. Ct. App. 2007). A claim for unjust enrichment is commonly characterized as an implied-in-law or quasi-contract claim. Caldas v. Affordable Granite & Stone, Inc. , 820 N.W.2d 826, 838 (Minn. 2012). But "unjust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others ... it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." First Nat'l Bank of St. Paul v. Ramier , 311 N.W.2d 502, 504 (Minn. 1981). An unjust-enrichment claim also is appropriate when a defendant's conduct in retaining the benefit is morally wrong. Schumacher v. Schumacher , 627 N.W.2d 725, 729 (Minn. Ct. App. 2001).
1. Benefit and Acceptance
Goodbye Vanilla argues that its contribution to Aimia's pitch constituted a benefit. Aimia disputes this and contends that Goodbye Vanilla had no effect on the amount and value of the services that Sony ultimately purchased from Aimia.
Under Minnesota law, knowledge and services can constitute a benefit. See Toomey v. Dahl , 63 F.Supp.3d 982, 999-1000 (D. Minn. 2014) (applying Minnesota law and denying motion to dismiss unjust-enrichment claim based on defendant's receipt and retention of plaintiff's "sophisticated business analysis and management skills").
Goodbye Vanilla alleges that Aimia knowingly received the benefit of Goodbye Vanilla's expertise, which helped Aimia secure its contract with Sony. Goodbye Vanilla relies on the deposition testimony of Annette Dimatos, a Sony executive, who testified that the Nielsen Data Fusion research was a key factor in awarding Aimia the contract. Goodbye Vanilla asserts that it was responsible for that content. Goodbye Vanilla also presents emails in which McLaren, an Aimia employee, recognized the value of Goodbye Vanilla's contribution to the pitch process. Given this evidence, whether Goodbye Vanilla provided a benefit to Aimia in the form of its knowledge and expertise is a genuine issue of material fact.
Aimia argues that even if Goodbye Vanilla's services helped Aimia secure the contract with Sony, entering into a contract with Sony was not a benefit because Sony did not actually purchase services from Aimia until months later. But the Sony contract is not the benefit on which Goodbye Vanilla bases its unjust-enrichment claim. The benefit is the services Goodbye Vanilla provided, which can have independent value. Thus, Aimia has not established the absence of a genuine dispute as to whether Goodbye Vanilla conferred a benefit and Aimia accepted it.
2. Inequitable Retention of Benefit
Goodbye Vanilla argues that it is inequitable for Aimia to retain the benefit of Goodbye Vanilla's services without fully *827 compensating Goodbye Vanilla. Aimia counters that it cannot unjustly retain that which it never received.
Whether a benefit was inequitably retained is a question generally reserved for the trier of fact. See Holman v. CPT Corp. , 457 N.W.2d 740, 744-45 (Minn. Ct. App. 1990) (reversing summary judgment because plaintiff presented question of fact as to whether plaintiff deserved compensation for sale finalized by former employer after termination); Anderson v. DeLisle , 352 N.W.2d 794, 796 (Minn. Ct. App. 1984) (reversing judgment notwithstanding the verdict because "the jury reasonably could find that equity and good conscience require [defendant] to compensate [plaintiff]"); see also Hartford Fire Ins. Co. v. Clark , 727 F.Supp.2d 765, 778 (D. Minn. 2010) (denying summary judgment because jury could find it "morally wrong" for party to retain benefits of third party's fraud).
Here, there is evidence that Aimia benefitted from Goodbye Vanilla's services and that Goodbye Vanilla was not compensated for the full value of its services. Both parties indicate that Aimia "reimbursed" Goodbye Vanilla for its expenses related to the pitch, but the record is unclear as to whether that payment fully compensated Goodbye Vanilla for its work. This ambiguity raises a question of material fact as to whether Aimia has inequitably retained a benefit.
As the moving party, Aimia bears the burden of establishing that no genuine dispute of material fact remains regarding Goodbye Vanilla's claim. Aimia has not met its burden on the elements of Goodbye Vanilla's unjust enrichment claim. Accordingly, Aimia's motion for summary judgment is denied as to Count VIII, Goodbye Vanilla's claim for unjust enrichment.
ORDER
Based on the foregoing analysis and all the files, records and proceedings herein, IT IS HEREBY ORDERED that Defendant Aimia Proprietary Loyalty U.S. Inc.'s motion for summary judgment, (Dkt. 99), is GRANTED as to Counts III, IV, V, VI, and VII, and DENIED as to Count VIII.

Aimia's parent company, Aimia Inc., was dismissed for lack of personal jurisdiction. (Dkt. 59.)

Goodbye Vanilla voluntarily dismissed Count I (unfair competition in violation of the Lanham Act), Count II (deceptive trade practices in violation of the Minnesota Deceptive Trade Practices Act), and Count IX (injunctive relief).

Nielsen Data Fusion is an analytical modeling tool that provides and analyzes consumer and market data.

At the hearing on Aimia's motion for summary judgment, Goodbye Vanilla referred the Court to "slides 10 through 16 of the attachment to the materials" as an example of improperly disclosed confidential information. But Goodbye Vanilla did not specify which slide deck (of several in the record) contains the referenced slides. Assuming Goodbye Vanilla refers to the "draft power point slide deck" attached as Exhibit A to the Third Declaration of Drew Pearson, the slides do not appear to contain Goodbye Vanilla's proprietary or confidential information.

In support of its contention that the Sony pitch was a "co-pitch" by Goodbye Vanilla and Aimia, Goodbye Vanilla cites portions of McLaren's deposition testimony that do not appear in the record. When asked about the omission, Goodbye Vanilla represented to the Court that all cited materials had been previously submitted. Nonetheless, the materials do not appear in the record before the Court.

Aimia concedes that there was an implied-in-fact contract between the parties and, therefore, Goodbye Vanilla's equitable claims must fail. Although "equitable relief cannot be granted where the rights of the parties are governed by a valid contract," U.S. Fire Ins. Co. v. Minn. State Zoological Bd. , 307 N.W.2d 490, 497 (Minn. 1981), the Federal Rules of Civil Procedure permit pleading claims in the alternative even when the elements of those claims are inconsistent, Fed. R. Civ. P. 8(d)(2)-(3). As Goodbye Vanilla is the nonmoving party, the Court will construe its pleadings in the most favorable light and assume that Goodbye Vanilla disputes the existence of an implied-in-fact contract for the purposes of its equitable claims.