*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0573**

G Urban Companies, Inc.,
Appellant,

vs.

Roseville Area Schools ISD #623,
Respondent.

**Filed December 4, 2023**
**Affirmed**
**Schmidt, Judge**

Ramsey County District Court
File No. 62-CV-21-4872

Beau D. McGraw, McGraw Law Firm, P.A., Lake Elmo, Minnesota (for appellant)

Zachary J. Cronen, Squires, Waldspurger & Mace, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Schmidt, Judge; and

Halbrooks, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

Appellant G Urban Companies Inc. (G Urban) challenges the summary-judgment dismissal of its claims of breach of contract, unjust enrichment, and promissory estoppel against respondent Roseville Area Schools ISD #623 (the district), arguing that issues of material fact regarding the bidding process that led to the parties' contract preclude summary judgment on all three claims. Because the plain language of the parties' contract defeats the breach-of-contract claim and the existence of an enforceable contract precludes equitable relief, we affirm.

## FACTS[1]

In mid-2019, the district began a construction project at a middle school that included work on its track and field. The district's construction manager solicited bids for the project, posting plans and specifications for bidding on the platform iSqFt. The bidding documents were also available in several other locations, including the Minnesota Builders Exchange (MBEX). The work scope for the project called for "removal of existing track aggregate as required to install engineered soil." An addendum to the bidding documents (Addendum No. 2) also referenced "engineered soil" and included a drawing (C200) that used shading to show installation of engineered soil as part of the project.

---

[1] Consistent with our review of an order granting summary judgment, our recitation of the facts includes only undisputed facts that we view in the light most favorable to G Urban as the nonmoving party. *Trebelhorn v. Agrawal*, 905 N.W.2d 237, 241 (Minn. App. 2017).

G Urban submitted a bid, offering to complete the work for $1,650,000. In its bid, G Urban acknowledged that it received and examined the bidding documents and addenda. After all bids were publicly opened and read at the Roseville Area Schools District Center, G Urban was revealed to be the lowest bidder. The parties thereafter reviewed the scope of the project, confirming that it included installation of a new engineered soil track. G Urban told the district that its bid did not account for installing engineered soil because it obtained a drawing from MBEX that did "not indicate that engineered soil is required for the surface of the track." G Urban asserted that the apparent inconsistency in bidding documents made the bidding process unfair and requested that the district either award it the project and later provide for additional compensation for installing engineered soil or reject all bids and allow for rebidding. The district denied the requests.

Instead, the construction manager explained that the district intended to accept G Urban's bid amount as is "with no intention of accepting a change order." The construction manager further offered that if G Urban was "not in agreement they may withdraw their bid." G Urban responded that it "will not agree to withdraw its bid" and reiterated its requests for the district to award the contract to G Urban with the additional cost for the engineered soil or for the district to re-bid the entire project. The district replied that G Urban will be "expected and required to utilize engineered fill in the track areas." The district also noted that it "will strongly oppose any effort by G. Urban, post-award, to assert a claim of entitlement to additional compensation for such fill." G Urban did not withdraw its bid.

3

The district's school board held a public meeting to award the project. G Urban's owner attended the meeting and spoke during the public-comment period, restating the request for additional compensation for installing engineered soils. The district awarded the project to G Urban. G Urban and the district thereafter executed a written contract. In defining the work that G Urban agreed to perform, the construction contract incorporated numerous bid documents, including Addendum No. 2 and drawing C200, which identify installation of engineered soil as part of the project. The district agreed to pay G Urban $1,650,000 for the work. The construction contract states that it "represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral." The construction contract also permits modification of the scope of the work and the compensation if the parties agree to a "change order."

In early 2020, G Urban wrote to the construction manager requesting an additional $77,750 as "extra costs" for installing engineered soil, reiterating its position that some bidding documents did not clearly show that work as part of the project. The construction manager rejected the request, stating: "The expectation is that because [G Urban] accepted the project award that engineered fill will be provided throughout the track as shown in the project documents at no additional cost to the project." G Urban completed the project, including installation of engineered soil.

G Urban sued the district, alleging that the construction contract is an "enforceable agreement," it requested a change order regarding installation of engineered soil, and the district breached the contract by "fail[ing] to approve [G Urban's] change order and

4

refus[ing] to compensate [G Urban] for the use of engineered soils in the track and field area." G Urban also asserted claims of unjust enrichment and promissory estoppel based on the district's refusal to compensate it for installing engineered soil.

The district moved for summary judgment, arguing that it did not breach the construction contract by declining to grant a change order because the contract required installation of engineered soil. The district also argued G Urban cannot receive equitable relief because a valid contract governs the parties' actions. The district court agreed, granted summary judgment, and dismissed the case with prejudice. G Urban appeals.

## DECISION

Summary judgment is proper if the moving party shows that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. On appeal, we review "the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening*, 796 N.W.2d 503, 504–05 (Minn. 2011). "We review a district court's summary judgment decision de novo." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). We view the evidence "in the light most favorable to the party against whom judgment was granted." *Trebelhorn*, 905 N.W.2d at 241.

**I.    The plain language of the construction contract defeats G Urban's breach-of-contract claim.**

To prevail on a breach-of-contract claim, a plaintiff must prove three elements: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to [its] right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011).

G Urban and the district undisputedly formed a valid contract. Whether the district breached the construction contract depends on interpretation of the contract, which presents a question of law that we review de novo. *Trebelhorn*, 905 N.W.2d at 242. "If a contract is unambiguous, a court gives effect to the parties' intentions as expressed in the four corners of the instrument, and clear, plain, and unambiguous terms are conclusive of that intent." *Christensen L. Off., PLLC v. Olean*, 916 N.W.2d 876, 886 (Minn. App. 2018).

G Urban argues that material fact issues preclude summary judgment on its claim that the district breached the construction contract because (1) inaccurate bidding documents were posted on MBEX, misleading G Urban regarding the project's requirements; (2) the parties discussed a change order regarding engineered soil before executing the construction contract, and the construction contract permits G Urban to submit a change order; (3) the phrase "engineered soils" is ambiguous; and (4) the record contains conflicting evidence as to whether G Urban accessed the correct bid documents on iSqFt. Because none of these facts are material as to whether the district breached the construction contract, we are not persuaded.

6

In analyzing a breach-of-contract-claim, we look to the language of the contract itself. *Christensen*, 916 N.W.2d at 886. Unless that language is ambiguous, we will not consider extrinsic evidence of "previous understandings and negotiations." *Triple B & G, Inc. v. City of Fairmont*, 494 N.W.2d 49, 53 (Minn. App. 1992). Here, the construction contract is not ambiguous. The contract plainly permits change orders, but it just as plainly provides that a change order "shall be based upon agreement among" the district, the construction manager, the architect, and G Urban. The construction contract does not require the district to agree to any change order that G Urban submits. Similarly, the contract plainly requires G Urban to install engineered soil—as part of the agreed-to work, for the agreed-to compensation—by incorporating Addendum No. 2 and drawing C200.

G Urban does not dispute that the construction contract calls for installing engineered soil, only that G Urban did not have access to Addendum No. 2 and drawing C200 before bidding. But before signing the contract, G Urban undisputedly understood that the contract included engineered soil and declined to withdraw its bid. At oral argument, counsel argued withdrawing the bid was "impracticable . . . from an economic standpoint." This argument inherently recognizes that G Urban made a business decision to sign the contract that included engineered soil, perform under the contract and install engineered soil, and take a calculated business risk that the district may not accept the change order for additional compensation for the engineered soil. G Urban's business decision to sign the contract knowing the risks does not make the agreement unenforceable or prove that the district breached the contract. Accordingly, the district court did not err by granting summary judgment to the district on G Urban's breach-of-contract claim.

**II.    The construction contract precludes G Urban's equitable claims.**

Unjust enrichment and promissory estoppel are equitable doctrines that allow a plaintiff to recover under circumstances when the parties' rights are not governed by a contract. *Herlache v. Rucks*, 990 N.W.2d 443, 450 (Minn. 2023) (defining unjust enrichment); *Javinsky v. Comm'r of Admin.*, 725 N.W.2d 393, 398 (Minn. App. 2007) (defining promissory estoppel). These equitable claims afford relief in the absence of an adequate legal remedy, but they are not available when "the rights of the parties are governed by a valid contract." *Colangelo v. Norwest Morg., Inc.*, 598 N.W.2d 14, 19 (Minn. App. 1999), *rev. denied* (Minn. Oct. 21, 1999).

To avoid application of this rule, G Urban argues that the construction contract does not "completely" govern the parties' rights because it is ambiguous "on what is meant by 'engineered soils.'" We are not persuaded. Even if the phrase "engineered soils" is ambiguous, it does not make the construction contract incomplete; it simply permits consideration of extrinsic evidence to interpret it. *See Trebelhorn*, 905 N.W.2d at 242. But more importantly, as noted above, any ambiguity in the phrase "engineered soils" is immaterial as to whether the construction contract required G Urban to install engineered soil as part of the agreed-to work for the agreed-to compensation. Because a valid contract governs the parties' rights and obligations with respect to installation of engineered soil and compensation for that work, the district court properly granted summary judgment to the district on G Urban's equitable claims.

**Affirmed.**

8